Present: All the Justices

DR. HILL CARTER, SR., ET AL.

v. Record No. 970158

OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
January 9, 1998

COUNTY OF HANOVER, ET AL.

FROM THE CIRCUIT COURT OF HANOVER COUNTY
Richard H.C. Taylor, Judge

In this appeal involving a suit between adjoining landowners, we consider whether an easement from previous use has been established.

BACKGROUND

The tracts of land in question were once part of an estate in Hanover County commonly known as Courtland. In 1965, Courtland was owned by John Worthington Whaley and Katherine Cox Whaley and consisted of 755 acres bordered generally on the north by Mechumps Creek and Garland Hill, an estate owned by the Carter family,[1] and on the east by Broadneck, a tract owned by the Commonwealth. U.S. Route 301 bisected Courtland, but for present purposes we are concerned only with that portion of the estate east of U.S. Route 301.

The Courtland estate was made up of a patchwork of tillable fields, wooded areas, and marsh. The tillable fields were connected by numerous unpaved roads running through the property

---

[1] Dr. Hill Carter, Jr., one of the plaintiffs below, was not an owner of the original Garland Hill. However, it is not contested that at the time this suit was commenced, Dr. Hill Carter, Sr. and Dr. Hill Carter, Jr. were joint owners of the pertinent 64-acre tract subsequently described herein. To avoid confusion, these parties will be referred to here as "the Carter family."

and were continuously farmed during the Whaleys' ownership. One such road, the "Farm Road," ran from U.S. Route 301 to various fields and terminated in the "Sweet Field," a 16-acre tillable field set upon a high bank above a marshy section of the Mechumps Creek border between Garland Hill and Courtland.

In 1963, the Carter family acquired from Bruce G. Jones, Jr. and Jones Planing Mill Corporation an 80-acre tract bounded on the west by Garland Hill and Courtland and on the south by Courtland and Broadneck (the Jones tract). The Jones tract was bisected by Mechumps Creek and, thus, extended the contiguous land of the Carter family south of Mechumps Creek and the previous adjoining border with Courtland.

In 1965 following the death of Mr. Whaley, the Carter family purchased a 64-acre tract of Courtland along the course of Mechumps Creek (the 1965 tract) from Mrs. Whaley and the trustee of Mr. Whaley's estate. The 1965 tract was mostly marshlands, but included four acres of the Sweet Field in a narrow strip on the north and east sides of the field following along the top of a steep, wooded bank above the marshlands. The 1965 tract included a portion of the Farm Road which terminated at a former home site on the eastern edge of the Sweet Field. However, the deed of conveyance made no reference to an easement over the Farm Road.

Shortly after acquiring the 1965 tract, the Carter family used the Farm Road to transport live chestnut trees to the former homesite, where the trees were planted as part of a forestry experiment. In 1966, the Carter family constructed an earthen

dam across Mechumps Creek in the Jones tract creating a small lake in the marshy area below the Sweet Field. The dam has been replaced and improved twice since its original construction, with a bridge being added to its spillway which is able to support light vehicles safely. Although a dry-weather road, traversable by four-wheel drive vehicles only, was constructed from the south side of the dam up the bank to the Sweet Field, the Carter family occasionally used the Farm Road to reach the Sweet Field and the adjoining property of the 1965 tract south of the small lake for silvacultural and recreational purposes.

In 1966, Mrs. Whaley and her husband's estate sold the remaining 691 acres of Courtland to Richard Kennon Williams.[2] In 1979, Williams and his wife sold the eastern 373 acres of Courtland, including the remaining portion of the Sweet Field, to the County of Hanover. Williams and his wife subsequently transferred most of the western portion of Courtland to its present owner, retaining only the manor home and a small amount of surrounding acreage.

After acquiring the eastern portion of Courtland, in order to obtain a drainage area for a proposed landfill, the County negotiated with the Carter family to exchange a 19-acre tract which included the remaining portion of the Sweet Field (the 1979 tract) for the southern 20 acres of the Jones tract. With the

---

[2] The record suggests that there was a subsequent transfer of the property to "Courtland Enterprises," an entity controlled by Williams, and a further transfer from that entity to Williams and his wife. These transactions are not relevant to the issues considered here.

conclusion of this transaction, the property boundaries were set as they remain today, except that in 1996 the County transferred an interior portion of its property to the Pamunkey Regional Jail Authority.[3]

Prior to the time of severance of the 1965 tract from Courtland, the Farm Road was in use by various parties, but was principally used by tenant farmers to move farming equipment between the tillable fields of Courtland including the Sweet Field. It is not disputed that after 1965 use of the Farm Road continued by Williams' tenant farmers for farming operations on Courtland, and in particular to farm the balance of the Sweet Field retained in Courtland.

Beginning in 1974, James M. Newcomb farmed various fields on Courtland including Williams' portion of the Sweet Field, using the Farm Road and other roads on the property to go to and from U.S. Route 301. Newcomb also received permission from the Carter family, as had other tenant farmers since 1965, to farm the four acres of the Sweet Field that was part of the 1965 tract. In exchange, Newcomb agreed to leave some crops in the Sweet Field unharvested in order to attract wildlife.

On January 10, 1980, the County Administrator sent a copy of the recorded deed of exchange of the 1979 tract for the 20 acres of the Jones tract to the Carter family. In a transmittal letter

---

[3] The present owner of the western portion of Courtland, R. Bruce Mallett, was not a party to the suit to establish the easement. Accordingly, the effect of our opinion is limited to those portions of the easement which extend over the property owned by the County and the Pamunkey Regional Jail Authority.

sent with the deed, the County Administrator stated:

> This letter will serve as notice from Hanover County that you are granted reasonable access to the field which is a portion of the land conveyed to you by the County for the purpose of farming by Mr. Newcomb at the same time the County acreage is farmed.

Newcomb and other tenants continued to farm the Sweet Field and the fields in the County's portion of Courtland until development by the County and the Pamunkey Regional Jail Authority eliminated much of the tillable acreage there. During the planning of the development of the County's portion of Courtland, the County Operations Supervisor wrote to the Carter family and acknowledged that the Farm Road was used "for ingress and egress for cultivation of your fields," and stated that proposed development "will not interfere with the roadway that leads to the back of your property."

In 1995, the County proposed building a shooting range on the portion of its property immediately adjoining the 1965 and 1979 tracts. The Carter family objected to the construction of the shooting range on the ground that it would block access to the Sweet Field by the Farm Road. On February 12, 1996, the Carter family filed an amended bill of complaint seeking a declaration of an easement from previous use over the Farm Road and a temporary injunction to prohibit construction of the shooting range.[4] The County asserted that the prior access to

---

[4] The Carter family also assert that they are entitled to a broader easement under a theory of easement by necessity. However, it was stipulated before the commissioner that the issue to be decided was limited to the existence of an easement from previous use. Accordingly, the issue of an easement by necessity was not properly before the chancellor and cannot be raised for the first time on appeal.

the Sweet Field was not pursuant to an easement, but that if an easement once existed, it had been terminated by operation of law. After a hearing on the Carter family's motion for a temporary injunction, the chancellor found in an opinion letter that "the evidence produced . . . raise[s] questions as to the likeliness of [the Carter family] prevailing on the merits." The County was directed to draft a decree overruling the motion for temporary injunction; however, no decree to that effect was ever entered. In April, 1996, the County began construction of 20-foot high earthen berms as part of the shooting range, cutting off access to the Sweet Field by the Farm Road.

The chancellor referred the matter to a commissioner in chancery, who filed the record and his report on July 25, 1996. The record includes transcripts of oral testimony, deposition testimony, and a substantial number of exhibits. The report concludes with a finding that the Carter family established an easement from previous use over the Farm Road to the four acres of the Sweet Field which were a part of the 1965 tract, but that the easement should be limited to providing access for farm equipment.

Both parties submitted objections to the commissioner's report. In an opinion letter dated September 27, 1996, the chancellor stated that he agreed with the "statement of the law applicable in this matter . . . [and] most of the facts relied upon [by the commissioner]." Rejecting the ultimate finding of the commissioner and referring to the January 10, 1980 letter from the County Administrator to the Carter family, the

chancellor further stated that the previous use of the Farm Road at that time, and presumptively at times before, was to connect all the acreage under cultivation on Courtland. Thus, the chancellor reasoned that when the County's portion of Courtland was no longer under cultivation, the Carter family no longer had use of the Farm Road to access the Sweet Field. We awarded the Carter family this appeal from the chancellor's final decree entered October 24, 1996 and incorporating the rulings expressed in the opinion letter.

### DISCUSSION

We follow the well established standard of review applicable to appeals from judgments in equity suits wherein the chancellor has set aside the findings of a commissioner. In such cases, "we must review the evidence and ascertain whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court." Hill v. Hill, 227 Va. 569, 577, 318 S.E.2d 292, 296-97 (1984). Moreover, even though the chancellor disapproves some or all the commissioner's findings, "we must, nevertheless, give due deference to the commissioner's findings in those areas where the commissioner saw, heard, and evaluated the witnesses at first hand while the trial court did not." Hurd v. Watkins, 238 Va. 643, 646, 385 S.E.2d 878, 880 (1989).

Under this standard, we conclude that the dispositive issue of this appeal is whether the evidence supports the commissioner's finding of a limited easement from previous use or the chancellor's ruling that no such easement existed.

An easement from previous use comes into existence because "[a]bsent express restrictions imposed by the terms of the grant, a grantor of property conveys everything that is necessary for the beneficial use and enjoyment of the property." Brown v. Haley, 233 Va. 210, 218, 355 S.E.2d 563, 569 (1987). In Russakoff v. Scruggs, 241 Va. 135, 400 S.E.2d 529, (1991), we described how this easement arises:

> While one cannot have an easement on land he owns, if, before severance, one part of the land was used for the benefit of another part, a "quasi-easement" exists over the "quasi-servient" portion of the land. That easement is conveyed by implication when the dominant tract is severed; the grantee of the dominant tract obtains an easement over the servient tract, based on the previous use. See generally Sanderlin v. Baxter, 76 Va. 299 (1882); R. Minor, [The Law of Real Property § 99 (F. Ribble 2d ed. 1928)].
>
> While the extent of the easement right is determined by the circumstances surrounding the conveyance which divides the single ownership, the existence of the easement is established on a showing that (1) the dominant and servient tracts originated from a common grantor, (2) the use was in existence at the time of the severance, and that (3) the use is apparent, continuous, and reasonably necessary for the enjoyment of the dominant tract. Brown, 233 Va. at 219, 355 S.E.2d at 569; Fones v. Fagan, 214 Va. 87, 90-91, 196 S.E.2d 916, 919 (1973).

Russakoff, 241 Va. at 139, 400 S.E.2d at 532.

The commissioner addressed each of the conditions required to establish an easement from previous use. The first two conditions, that the dominant and servient tracts originated from the same grantor and that the Farm Road was in use at the time of severance were not seriously contested by the parties and are amply established on the record. Thus, the third condition, that the use was apparent, continuous, and reasonably necessary for

the enjoyment of the dominant tract, was the principal point of contention between the parties considered by the commissioner.

The County contends that the existence of the Farm Road was not apparent because it consisted of a meandering series of segments connected by various tillable fields, and that access between these segments was not necessarily fixed. The commissioner found that "any person viewing those segments would understand (i.e. [it] would be 'apparent' to the observer) that they served as access to Route 301." This finding of fact is supported by the evidence and, since the chancellor did not contradict this finding in his opinion letter, we accept it as conclusive.

Similarly, the commissioner's finding that the use of the Farm Road to access the Sweet Field for agricultural purposes was continuous at all relevant times is well supported by the record, was not contradicted by the chancellor, and, thus, will not be disturbed on appeal.

The remaining point of contention between the parties, and the determining factor which caused the chancellor to disapprove the commissioner's ultimate finding, relates to the final requirement that the use be reasonably necessary for the enjoyment of the dominant tract. The County asserts that, since the purchaser of the dominant tract also owned an adjoining tract with ample access to road frontage, the previous use of the Farm Road to provide access to road frontage could not have been reasonably necessary at the time of severance. The County's position is that, since the evidence shows that the Sweet Field

was subsequently connected to other road frontage of Garland Hill via the dam, spillway bridge, and dry-weather road, the Carter family had an alternate, if less convenient, method of obtaining access from U.S. Route 301 to the 1965 tract. In making this assertion, the County has confused the requirements for proving an easement from previous use with those of an easement by necessity.

While it is true that both easements from previous use and easements by necessity arise by implication, an easement by necessity will not be found if there is another way of access, although less convenient and which will involve some labor and expense to develop. See Chaiken v. Harry J. O'Meara Tile Co., 212 Va. 510, 513, 184 S.E.2d 746, 749 (1971). As we noted in Russakoff, the determination that an easement from previous use is reasonably necessary to the use and enjoyment of the dominant tract "requires a showing of need which, by definition, may be less than that required for establishing an easement by necessity, but must be something more than simple convenience. We have recognized that whether this element is established 'generally will depend upon the circumstances of the particular case.' Jones v. Beavers, 221 Va. 214, 221, 269 S.E.2d 775, 779 (1980)." Russakoff, 241 Va. at 140, 400 S.E.2d at 533. Thus, we reject the County's contention that the existence of an alternative access is sufficient alone to bar the finding of the easement, and we will consider, as the commissioner did, the particular circumstances of this case.

The commissioner found that at the time of severance, use of

the Farm Road to reach the 1965 tract was reasonably necessary for farming the portion of the Sweet Field which was part of that tract. The evidence supports this finding, inasmuch as at that time there was no other way of ingress and egress to the Sweet Field. Thus, the easement was implied at the time of severance. The commissioner further found that the subsequent construction of the dam, spillway bridge, and dry-weather road did not constitute an abandonment of the easement because this means of access was inadequate to support a continuation of the use provided by the Farm Road.

The chancellor, while agreeing with these findings in general, ruled that the commissioner's definition of the "use" as being for farming the four acres of the Sweet Field was in error. Rather, the chancellor concluded that the use was the farming operations on all of Courtland, of which the Sweet Field was a part. Finding that Courtland was no longer principally used for farming, the chancellor further concluded that the use had ceased to be reasonably necessary and, thus, that the easement had been extinguished. We disagree.

The commissioner correctly limited his inquiry to the necessity of the use to the dominant estate, not to the original common estate. If this were not the correct inquiry, then the owner of the servient estate would be able to frustrate the right of the dominant estate to the implied easement by altering the use of the servient estate. Accordingly, since the record adequately supports the commissioner's findings that access to the Farm Road remains reasonably necessary to farming operations

on the four acres of the Sweet Field included in the 1965 tract, we hold that the easement remains in existence.

Finally, we address the contention of the Carter family that the commissioner erred in limiting use of the easement to transporting farm equipment to and from the four acres of the Sweet Field.  The Carter family asserts that the easement should provide access to the entire 1965 tract for silvacultural and recreational purposes, citing their own use of the Farm Road for these purposes at various times as supporting their claim.  We disagree.

Generally, the owner of a dominant estate cannot expand the nature of an easement from previous use by altering the use of that easement.[5]  Nor is evidence of the use of an easement after the time of severance sufficient to establish the nature of the use at or prior to severance.  While it may be true that at some point prior to severance the Farm Road was used to provide access to the undeveloped portions of the 1965 tract for purposes related to forestry or recreation on an irregular basis, the overwhelming weight of the evidence shows that its continuous use, and its sole use at the time of severance, was to provide access to the tillable acreage of the Sweet Field.

For these reasons, we will reverse the judgment of the

_____

[5] We recognize that a <u>hostile</u> inconsistent use of an implied easement may lead to the creation of a broader easement by prescription.  However, the evidence here does not show that the silvacultural and recreational uses of the Farm Road after 1965 were sufficiently continuous to constitute a prescriptive use, and the Carter family did not advance a theory of a prescriptive easement.

chancellor and enter judgment for the Carter family in accord with the report of the commissioner.  Because the chancellor failed to grant the temporary injunction, the case will be remanded to the trial court for a determination of the damages, if any, to which the Carter family is entitled for the interruption in its use of the easement.

<u>Reversed and remanded</u>.