Present:  All the Justices

C. BENSON CLARK, ET AL.

v.  Record No. 982377   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                    September 17, 1999
ANNETTE E. SCOTT

                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                           Thomas S. Kenny, Judge

     In this appeal from a decree providing an accounting in the

dissolution of a partnership, we consider whether the evidence

supports the chancellor's award of damages, which was for an

amount less than that recommended by a commissioner in chancery.

     In 1988, Dr. C. Benson Clark and Dr. Annette E. Scott

formed a partnership known as Clark and Scott Dental Associates

(the partnership).  They entered into a written agreement (the

partnership agreement) under the terms of which they shared the

expenses of operating a dental practice in an office condominium

in Fairfax County.  Clark owned the office condominium and

leased it to the partnership.  As part of the partnership

agreement, the partners agreed to "exert their best endeavors

and skills for the interest, profit and advantages of the

partnership."

     At the time they formed the partnership, Clark had been a

dentist for about 19 years, and Scott had been a dentist for

three years.  Clark also maintained separate dental practices with other partners in Newport News and Chesapeake.

Scott engaged in the general practice of dentistry, while Clark specialized in providing dental implants and other forms of reconstructive surgery.  Clark and Scott orally agreed that Scott would refer patients to Clark for surgery, and Clark would refer patients to Scott for general dentistry.  Clark planned to treat patients in the partnership's office for no more than five days per month, while Scott worked there on a full-time basis. Under the terms of the partnership agreement, Scott was responsible for the day-to-day management of the dental practice.

The partnership began operating in April 1989.  In June 1990, Clark filed a bill of complaint in the trial court seeking dissolution of the partnership and payment from Scott of sums allegedly due Clark under the partnership agreement.  Clark alleged in the bill of complaint that the relationship between the partners began to deteriorate in January 1990, and that the partners' "ability to maintain a working business relationship has evaporated."

In February 1991, Clark filed a warrant in debt in the general district court alleging that Scott owed him rent under the office lease.  On Scott's motion, the general district court removed the warrant in debt to the circuit court.

When Scott vacated the partnership's office in June 1991, she removed equipment, furniture, and supplies belonging to the partnership. Clark filed a second bill of complaint in the circuit court, requesting return of the partnership's property, as well as an award of damages allegedly caused by Scott's removal of the property. The chancellor entered a permanent injunction, requiring Scott to return the equipment and reserving Clark's damage claim for later determination.

The chancellor entered orders consolidating the three cases and referred the matter to a commissioner in chancery. The chancellor directed the commissioner to consider whether the partnership should be dissolved and to determine the status of the accounts between the partners. The chancellor also asked the commissioner to determine whether the partnership had breached the office lease by failing to pay rent and, if so, the amount of damages due Clark under the lease. Finally, the chancellor directed the commissioner to determine whether and to what extent Scott's removal of partnership property from the office had caused Clark damage.

At an *ore tenus* hearing before the commissioner, Clark testified that on one Saturday in January 1990, he arrived at the partnership office to treat some patients and found that the lock on the outer door had been changed. He stated that he was unable to enter the office, and explained that this was the

3

first time he was aware of a problem concerning the partnership. Soon thereafter, a receptionist in the office informed him that Scott had instructed the office staff not to make any more appointments for him. Clark testified that he contacted his attorney, who advised him that he did not have the right to enter the office forcibly. Clark stated that the lack of access to the office was one reason he did not attempt to return there, and also explained that he and Scott "were not communicating," that Scott was "generally uncooperative," and that their business relationship had "deteriorated to a point that it was just uncomfortable."

Clark testified that he lost about $75,000 in income as a result of not being able to use the office between January 1990 and July 1991. He estimated that in November and December 1989, he treated "[p]robably three [patients]" there each month and earned about $4,500 per month.

In March 1991, Clark acquired a new partner who began treating patients in the partnership office prior to Scott's departure in June 1991. Clark testified that within one year of starting his dental practice with the new partner, Clark was earning about $18,000 per month based on surgeries he performed two days per month.

Scott testified that beginning in the summer of 1989, she referred "very few" patients to Clark because she "did not have

4

any faith or confidence" in the quality of the treatment he provided to his patients.  She explained that her business relationship with Clark was strained further in the fall of 1989 when she disagreed with the accounting procedures he used to monitor each partner's contributions to the partnership expenses.

Scott testified that she did not remember changing the lock on the outer door of the office in January 1990.  She explained that she changed the lock in April 1990 for security reasons, and that a key was available for Clark's use but that she did not know if he ever asked for or obtained the key.

Scott admitted that when she left the partnership office in June 1991, she removed some equipment belonging to the partnership.  She stated that she was concerned about her personal liability for repayment of the loan that the partnership had obtained to purchase the equipment.

In his report to the court, the commissioner found that Scott denied Clark access to the partnership's office, from January 15, 1990 to March 15, 1991, with the intent to terminate the partnership.  The commissioner concluded that Clark sustained a loss of profits from business income as a result of Scott's actions.  To determine the amount of lost profit damages Clark sustained each month during this time period, the commissioner used the $4,500 amount that Clark testified he

5

earned in both November and December 1989, and deducted from that amount Clark's share of the monthly partnership expenses. The commissioner found that Clark would have made a profit of $2,438 per month during these 14 months, and recommended a damage award of $34,132 for profits lost during that period.

The commissioner also determined that Clark had paid partnership expenses from January 1990 to March 1991. Finding that Clark received no benefit from these payments because of the "lockout," the commissioner recommended that Scott reimburse Clark the sum of $19,612 for those partnership expense payments.

The commissioner concluded that under the terms of the lease, Clark, as the owner of the leased premises, was entitled to reimbursement of his attorney's fees incurred as a result of the partnership's breach of the lease. Noting that Scott had conceded that "at least some rent" had not been paid, the commissioner recommended that Scott pay $3,000 for Clark's attorney's fees related to the partnership's breach of the lease.

Finally, the commissioner found that during 1989, Clark overpaid the sum of $16,763.74 for expenses due under the terms of the partnership agreement, and recommended that Scott reimburse Clark this amount. Based on these findings, the commissioner recommended that the trial court enter judgment in Clark's favor in the total amount of $73,507.74.

6

Scott filed exceptions to the commissioner's report, arguing that the evidence failed to support the commissioner's finding that Scott denied Clark access to the office with the intent to terminate the partnership. Scott also asserted that the commissioner improperly based his recommendation of damages for Clark's loss of business profits on speculative evidence.

The chancellor held that the evidence did not support the commissioner's finding that Scott denied Clark access to the office. Thus, the chancellor rejected the commissioner's recommendations for damages incurred during the "lockout" period, namely, the $19,612 sum that Clark paid for partnership expenses, and the $34,132 sum for Clark's lost profits.

Finally, the chancellor concluded that the lease was a partnership obligation, and that the evidence did not support a conclusion that Scott was solely responsible for breach of the lease. Therefore, the chancellor allowed Clark only one half the $3,000 in attorney's fees recommended by the commissioner. The chancellor confirmed the commissioner's finding that Scott owed Clark $16,763.74 for Clark's overpayment of partnership expenses in 1989, and entered final judgment for Clark in the total amount of $18,263.74. Clark appeals from this judgment.

The standard of review that we apply on appeal is well established. In equity suits in which the chancellor has set aside some of the commissioner's findings, we examine the

7

evidence to determine whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court.  Carter v. County of Hanover, 255 Va. 160, 166-67, 496 S.E.2d 42, 45 (1998); Orgain v. Butler, 255 Va. 129, 132, 496 S.E.2d 433, 435 (1998); Hill v. Hill, 227 Va. 569, 577, 318 S.E.2d 292, 296-97 (1984).  In doing so, we give due regard to the commissioner's findings on those subjects that particularly depend on the commissioner's ability to see, hear, and evaluate the testimony of the witnesses. Carter, 255 Va. at 167, 496 S.E.2d at 45; Hurd v. Watkins, 238 Va. 643, 646, 385 S.E.2d 878, 880 (1989); Hill, 227 Va. at 577, 318 S.E.2d at 297.

Clark argues that the evidence supports the commissioner's finding that Scott unilaterally breached the partnership agreement by denying Clark access to the partnership office from January 1990 to March 1991.  In response, Scott asserts that the evidence showed that the partners' business relationship deteriorated over a period of time, and that Clark made no effort to continue the partnership.

The commissioner accepted Clark's version of the events that transpired during this time period while the chancellor did not.  Our review of the record reveals that the evidence reasonably supports either conclusion.  Since resolution of this factual dispute rests strongly on the credibility of the

witnesses, we must defer to the commissioner's ability to evaluate the testimony and evidence given in his presence. Id. Thus, we will reverse the chancellor's holding rejecting the commissioner's finding that Scott breached the partnership agreement by denying Clark access to the office.

This finding, that Scott denied Clark use of the partnership's office, was the basis for the commissioner's recommendation that Scott pay Clark $19,612 for partnership expense payments he made during the period he was excluded from the office. Scott did not contest the commissioner's finding that Clark paid that amount for partnership expenses related to the conduct of the partnership's business. Based on this uncontested finding, which is supported by the evidence, we will reverse the chancellor's determination denying Clark reimbursement of that amount.

Clark next argues that the evidence supports the commissioner's finding that he sustained $34,132 in lost profits during the "lockout" period. In response, Scott contends that even accepting the commissioner's determination that she denied Clark access to the office, Clark failed as a matter of law to prove this portion of his damage claim. We agree with Scott.

While a plaintiff claiming lost profits from a business is not required to prove damages with mathematical precision, the plaintiff must produce sufficient evidence to permit the trier

9

of fact to estimate these damages with reasonable certainty. TechDyn Sys. Corp. v. Whittaker Corp., 245 Va. 291, 298, 427 S.E.2d 334, 339 (1993); Goldstein v. Kaestner, 243 Va. 169, 173, 413 S.E.2d 347, 349 (1992); ADC Fairways Corp. v. Johnmark Constr., Inc., 231 Va. 312, 318, 343 S.E.2d 90, 93 (1986). When an established business, with a proven earning capacity, is interrupted, the prior and subsequent record of the business' profits may be used to permit an intelligent and probable estimate of damages during a period at issue. Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc., 249 Va. 39, 50, 453 S.E.2d 261, 268 (1995); Mullen v. Brantley, 213 Va. 765, 768-69, 195 S.E.2d 696, 699-700 (1973). See ITT Hartford Group, Inc. v. Virginia Fin. Assoc., Inc., 258 Va. ___, ___, ___ S.E.2d ___, ___ (1999) decided today. However, since a new business is a speculative venture whose success depends on a multitude of contingencies, evidence of that business' initial profits does not provide the required safeguards permitting a reasonably certain estimate of damages for the purpose of proving lost profits. Id.

Here, the evidence is undisputed that the partnership's dental practice began in April 1989 and was in operation for only eight months when Scott breached the partnership agreement. The evidence also established that the partnership's business was "very light" in the early months of the practice and did not

10

begin to be "busy" until November or December 1989, just prior to Scott's breach in January 1990.

This record fails to disclose evidence reasonably supporting a conclusion that the partnership's dental practice achieved the status of an established business by January 1990. Therefore, since the partnership's dental practice was a new enterprise lacking an established earning capacity, the evidence does not permit a reasonably certain estimate that Clark's earnings in November and December 1989 were a reliable indicator of the amount he would have earned between January 1990 and March 1991. See Mullen, 213 Va. at 768-69, 195 S.E.2d at 699-700.

Clark's testimony regarding his earnings from his later partnership with a new partner also does not provide a basis for an intelligent and probable estimate of the profits he would have earned from his partnership with Scott. Clark testified that this later partnership was a completely new and separate undertaking that did not involve patients from his prior partnership with Scott. Thus, since the evidence is insufficient as a matter of law to support the commissioner's recommendation that Clark be awarded $34,132 in lost profits, we will affirm the part of the chancellor's judgment rejecting this recommendation.

11

Finally, Clark argues that the chancellor erred in awarding him only half the attorney's fees recommended by the commissioner.  We find no merit in this argument.  As the chancellor correctly noted, attorney's fees were allowable only under the terms of the lease between Clark and the partnership.  Clark failed to prove that Scott was solely responsible for the partnership's failure to make all the payments due under the lease agreement.  Thus, we will affirm that part of the judgment awarding Clark, as lessor of the office condominium, one half the attorney's fees attributable to his enforcement of the lease agreement against the partnership.

In summary, we hold that the evidence supports the following awards in Clark's favor:  1) $16,763.74 for his overpayment of partnership expenses in 1989; 2) $19,612 for Clark's payment of partnership expenses during the "lockout" period; and 3) $1,500 in attorney's fees for the partnership's breach of the lease agreement.  Therefore, we will affirm in part, and reverse in part, the chancellor's judgment and enter final judgment in favor of Clark in the total amount of $37,875.74.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and final judgment.</u>

12