UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION LOCAL 400, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Farm Fresh Acquisition, Inc., Intervenor.

Nos. 98–1422 & 98–1479.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 29, 1999.

Decided Aug. 22, 2000.

Carey R. Butsavage argued the cause for petitioner. With him on the briefs was James B. Coppess.

Steven B. Goldstein, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and David Habenstreit, Supervisory Attorney. John D. Burgoyne, Deputy Associate General Counsel, entered an appearance.

Michael P. Oates argued the cause for intervenor. With him on the brief was A. Neal Barkus.

Before: WILLIAMS, SENTELLE, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

The United Food and Commercial Workers International Union, Local 400, AFL–CIO ("the Union") filed unfair labor practice charges with the National Labor Relations Board in connection with an organizing drive at Farm Fresh grocery stores in the Tidewater area of Virginia.[1] The Board determined that Farm Fresh had committed a number of unfair labor practices, and the company has not petitioned for review of that determination. The Board declined, however, to find unfair labor practices in two circumstances as to which the Union has petitioned for review: the ejection of nonemployee organizers from the snack bar at one Farm Fresh store, and the exclusion of nonemployee organizers from the sidewalk in front of four other stores. We consider those matters below.

I

We begin with the snack bar incident, which itself began with a sidewalk incident. Farm Fresh operates a grocery store on Princess Anne Road in Virginia Beach, Virginia. The store operates under a lease that covers both the building and its adjacent sidewalk. On May 1, 1990, James Green and Dudley Saunders, Union organizers not employed by Farm Fresh, were outside the Princess Anne Road store soliciting employee support. They stood approximately 30 feet from the entrance. The store's manager, Nat Harlow, approached the two organizers and instructed them to move 50 feet away in accordance with a Farm Fresh policy barring all solicitation within 50 feet of store entrances. The organizers refused to move, and Harlow summoned the police. The police told the organizers that if they did not move, Harlow could obtain warrants for their arrest for trespass. When Harlow left to obtain the warrants, the organizers departed. A magistrate issued trespass warrants the next day.[2]

---

1. Farm Fresh operated the stores under various names including Farm Fresh, Nick's, and Food Carnival. Farm Fresh was subsequently acquired by FF Acquisition, L.L.C. For ease of reference we will refer to the employer and all of its stores as "Farm Fresh."

2. The authority of the Princess Anne Road store to exclude the organizers from its sidewalk has not been challenged in this court. *See infra* Part II.

On May 3, 1990, an attorney for Farm Fresh sent the Union a letter "regarding the recent activities of organizers for UFCW Local 400 at stores owned and operated by Farm Fresh." The letter advised that, under company policy, "[a]ll outside solicitors must remain no closer than 50 feet from public entrances to the stores," and that "[t]he snackbar or cafeteria facilities may be used only in ways consistent with their use by members of the public generally." The letter also specifically noted that warrants accusing Saunders and Green "of trespassing have been issued by a magistrate for the City of Virginia Beach," and requested "that you advise these men that if they again appear on the property of the store on Princess Anne Road they will be considered trespassers and will be treated as such." J.A. at 137–38.

On May 14, Green and Saunders returned to the Princess Anne Road store to eat lunch at its snack bar. Store manager Harlow told them "that in light of the pending warrants issued on May 2, he did not want them anywhere in the store until the matter was resolved." *Farm Fresh, Inc.,* 326 N.L.R.B. No. 81, at 2, 1998 WL 598582 (1998). Harlow permitted the organizers to finish their meal, and thereafter they departed. The Union subsequently filed charges alleging that Farm Fresh had violated section 8(a)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), by ordering the organizers to leave the snack bar.[3]

At the time of the incidents in question, the right of access by nonemployee union organizers to employers' public snack bars was governed by the NLRB's opinion in *Montgomery Ward & Co.,* 288 N.L.R.B. 126 (1988), *rev'd on other grounds,* 904 F.2d 1156 (7th Cir.1990). In *Montgomery Ward,* the Board held that "solicitation in restaurants cannot be prohibited when ... the conduct of the nonemployee organizer is consistent with the conduct of other patrons of the restaurant." *Id.* at 127.[4] Before the Union's case against Farm Fresh was decided, however, the Supreme Court issued its decision in *Lechmere, Inc. v. NLRB,* 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992). *Lechmere* held that an employer is not required to open its property to nonemployee organizers unless the union can show that it has no other reasonable means of communicating with the employees, or that the employer's access rules discriminate against union solicitation. *See id.* at 535, 112 S.Ct. 841; *see also Lucile Salter Packard Children's Hosp. v. NLRB,* 97 F.3d 583, 587 (D.C.Cir. 1996).

In the instant case, the NLRB found that Farm Fresh had excluded Saunders and Green from the snack bar on the basis of an across-the-board policy banning solicitation by any outsider at the facility. The Board then held that although such a no-solicitation ban would have been unlawful under *Montgomery Ward,* that decision could not survive *Lechmere.* Board Members Fox and Liebman dissented. They argued, first, that the viability of *Montgomery Ward* was not at issue in this case because the union organizers had not been ejected on the basis of a no-solicitation policy, but rather because there were outstanding trespass warrants against them. Second, they argued that *Montgomery Ward* did survive *Lechmere* because it was grounded in the antidiscrimination exception to the employer's right to exclude. Agreeing with the dissenters as to the first

---

**3.** Section 7 of the NLRA, 29 U.S.C. § 157, guarantees employees "the right to self-organization, to form, join, or assist labor organizations, ... and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." Section 8(a)(1) makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" by section 7. *Id.* § 158(a)(1).

**4.** *See Farm Fresh, Inc.,* 301 N.L.R.B. 907, 928 (1991); *Dunes Hotel & Country Club,* 284 N.L.R.B. 871 (1987); *Harold's Club,* 267 N.L.R.B. 1167, 1167 (1983), *enforced,* 758 F.2d 1320 (9th Cir.1985); *Marshall Field & Co.,* 98 N.L.R.B. 88, 94 (1952), *enforced as modified,* 200 F.2d 375 (7th Cir.1952).

point, we have no occasion to address the second.

This court must uphold a decision of the Board with respect to a question of fact "if it is supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e); *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). In its eagerness to address the *Lechmere* issue, however, the Board's majority conjured a factual situation as to which there is no substantial evidence. Indeed, we can find no evidence at all that Farm Fresh ejected Green and Saunders on the basis of a company policy barring solicitation in the snack bar. Rather, all of the evidence, including Farm Fresh's own frank admission, indicates that Green and Saunders were excluded simply because of the outstanding trespass warrants. *See* Farm Fresh Br. at 12 n.5 ("[T]he two organizers excluded from the snackbar were asked to leave *because of outstanding trespass warrants* issued by the City of Virginia Beach.") (emphasis added).

When manager Harlow confronted Green and Saunders at the snack bar, he gave one and only one explanation for asking them to leave: the existence of the trespass warrants. *See* J.A. at 660 (testimony of Harlow); *id.* at 578 (testimony of Green); *id.* at 636 (testimony of Saunders). That explanation is consistent with Farm Fresh's May 3 letter, which specifically "requested that you advise these men that if they again appear on the property of the store on Princess Anne Road they will be considered trespassers and will be treated as such." J.A. at 138. It is also consistent with the absence of any evidence that Green and Saunders were soliciting at the snack bar on May 14; the only evidence is that they were eating lunch.

Nor is there any support for the proposition that Farm Fresh had a no-solicitation policy with respect to the snack bar. To the contrary, in their brief before the Board, Farm Fresh stated that it "permitted Union organizers to engage in lawful solicitation in the snack bars which Farm Fresh operated in many of the stores in question." *Farm Fresh, Inc.*, 326 N.L.R.B. No. 81, at 10 (Members Fox and Liebman dissenting) (quoting Farm Fresh Br. in Support of Cross Exceptions, at 7). This is confirmed by specific evidence that Union organizers had previously engaged in solicitation in Farm Fresh's snack bars without interference from the company. *See id.* at 10 n. 4. Indeed, Green and Saunders had themselves frequently solicited employees at the Princess Anne Road snack bar prior to May 3. *See id.* As the Board's Administrative Law Judge (ALJ) found, the ejection of Saunders and Green was "an exception to [Farm Fresh's] general 'hands off' approach to nondisruptive organizational conduct on the part of Union representatives inside the stores." *Id.* at 22 (ALJ Decision).

The NLRB did not dispute this evidence, acknowledging that Farm Fresh's policy may previously have been "more lenient." *Farm Fresh, Inc.*, 326 N.L.R.B. No. 81, at 3. The Board concluded, however, that whatever Farm Fresh's earlier policy had been, the May 3 letter made clear it had a no solicitation policy as of that date. In reaching this conclusion, the Board relied on two paragraphs of the letter. Paragraph 1 stated that all outside solicitors must remain "no closer than 50 feet from public entrances." Paragraph 3 stated that snack bars could be used "only in ways consistent with their use by members of the public generally." The Board concluded that the first paragraph controlled, and was intended to ban solicitation not just from the portion of the sidewalk that was within 50 feet of the entrance, but from the entire store—inside and out.

The Board reached this conclusion notwithstanding that paragraph 3 did not state that solicitation was banned in the snack bar, whether by organizers or "the public generally." The weakness of the Board's finding is further illuminated by the employer's own rejection of the intent the Board attributed to it. At oral argu-

ment, counsel for intervener Farm Fresh candidly stated that the May 3 letter did *not* represent a no-solicitation policy, but rather was intended to be consistent with *Montgomery Ward*—which required employers to permit snack bar solicitation as long as organizers behaved in a manner consistent with that of the public in general. That intent is hardly surprising. At the time the letter was written, *Montgomery Ward* was the governing law and paragraph 3 mirrors its language. *Compare* Letter ¶ 3 (J.A. at 137) (stating that snack bar "may be used only in ways consistent with their use by members of the public generally"), *with Montgomery Ward,* 288 N.L.R.B. at 127 (holding that exclusion from snack bar is improper when "the conduct of the nonemployee organizer is consistent with the conduct of other patrons of the restaurant").

■ The NLRB rejected the unfair labor practice charge against Farm Fresh based on its factual finding that the company expelled the two organizers because they were violating the company's no-solicitation policy, and based on its legal conclusion that such a policy was lawful. Because there is no substantial evidence to support the Board's factual finding, its ultimate disposition cannot stand. Hence, we have no occasion to consider whether the Board's legal conclusion—that employers may ban all solicitation from their public snack bars—is correct. Nor do we have reason to consider whether the actual ground upon which Farm Fresh ejected the organizers—the existence of outstanding trespass warrants—would have sufficed to support dismissal of the unfair labor practice charge. Because this court "cannot sustain agency action on grounds other than those adopted by the agency in the administrative proceedings," *Macmillan Pub. Co. v. NLRB,* 194 F.3d 165, 168 (D.C.Cir.1999) (citing *SEC v. Chenery*

*Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943)), we reverse the Board's decision and remand the case to the agency for further consideration.

## II

The second issue before us concerns Farm Fresh's policy of barring solicitation on the sidewalks in front of nine of its stores. All nine stores were situated in strip malls with common areas and cotenants. Each store was operated under lease, with Farm Fresh possessing varying rights and/or obligations with respect to the sidewalks. Notwithstanding the variances in the leases, Farm Fresh enforced a common policy at each store: No solicitation of any kind was permitted within 50 feet of the public entrance. At each of the nine stores involved, nonemployee organizers were informed of the policy and, when they refused to comply, were threatened with legal action or arrested. The Union filed unfair labor practice charges against each store, contending that Farm Fresh violated NLRA § 8(a)(1) by enforcing the policy on sidewalks as to which they lacked sufficient property interests to exclude nonemployee organizers.

All parties agree that the lawfulness of the employer's exclusion of nonemployee union representatives in this situation is governed by the NLRB's decision in *Indio Grocery Outlet,* 323 N.L.R.B. 1138, 1141 (1997), *enforced,* 187 F.3d 1080 (9th Cir. 1999). *Indio* reaffirmed that for exclusion to be lawful, "there is a threshold burden on the [employer] to establish that it had, at the time it expelled the Union representatives, an interest which *entitled* it to exclude individuals from the property." *Indio,* 323 N.L.R.B. at 1141 (internal quotation omitted).[5] To determine whether the employer had such a property interest, the Board "look[s] to the law that created

**5.** *See O'Neil's Markets v. United Food and Commercial Workers' Union,* 95 F.3d 733 (8th Cir.1996), *enforcing sub nom. Food for Less,* 318 N.L.R.B. 646, 649–50 (1995); *Johnson & Hardin Co.,* 305 N.L.R.B. 690, 691, 695 (1991), *enforced in pertinent part,* 49 F.3d 237 (6th Cir.1995); *Polly Drummond Thriftway Inc., v. Local No. 1349* 292 N.L.R.B. 331, 332 (1989), *enforced,* 882 F.2d 512 (3rd Cir.1989); *Barkus Bakery,* 282 N.L.R.B. 351, 354 (1986), *enforced,* 833 F.2d 306 (3rd Cir.1987).

and defined the [employer's] property interest, which is state, rather than Federal, law." *Id.*; *see also Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 217 n. 21, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) ("The right of employers to exclude union organizers from their private property emanates from state common law. . . ."). If the employer is unable to meet the burden of demonstrating the requisite property interest, its exclusion of union agents from the area constitutes a violation of section 8(a)(1). *See Indio,* 323 N.L.R.B. at 1141; cases cited *supra* note 5.

Applying this test, the ALJ found that Farm Fresh had not committed unfair labor practices at two of the stores, those at Princess Anne Road (discussed in Part I above) and High Street, because the company possessed sufficient property interests in the appurtenant sidewalks to exclude the organizers. In both cases, Farm Fresh had expressly leased both the stores and the sidewalks at issue. *See Farm Fresh, Inc.,* 326 N.L.R.B. No. 81, at 16, 21 (ALJ Decision). The NLRB affirmed the ALJ as to these stores, and the Union has not appealed.

As for the remaining stores, the ALJ concluded that Farm Fresh lacked sufficient property interests to exclude the organizers and therefore had committed unfair labor practices by ejecting them. Farm Fresh appealed to the Board, which affirmed the ALJ with respect to three of the stores. In each of those three cases, the sidewalks were not leased to Farm Fresh but rather remained in the exclusive control of the landlord. Nor did those leases impose upon Farm Fresh any obligations with respect to maintenance of the sidewalks. The Board concluded that the company had no right to eject the organizers from the sidewalks of those three stores, and that the ejections therefore constituted unfair labor practices. Farm Fresh has not sought review of those determinations.

This leaves the four stores that are the subject of this case: the Colonial Avenue, Shore Drive, Merrimack Trail, and Victory Boulevard stores. Although the lease agreements for these stores do not—with one possible exception noted below—lease the sidewalks to Farm Fresh, they do impose upon the tenant company an obligation to clean and maintain the sidewalks. The ALJ concluded that this obligation was insufficient to entitle Farm Fresh to expel the organizers from the property. The Board disagreed, concluding that the maintenance obligations were sufficient to entitle Farm Fresh to invoke the Virginia trespass statute. The Union petitions for review.

■ As the NLRB held in *Indio,* whether an employer has a sufficient property interest to exclude Union organizers is a question of state property law: in this case, the law of the Commonwealth of Virginia. As the NLRB has no special expertise in interpreting Virginia law, we review the question de novo. *See Cellwave Telephone Services L.P. v. FCC,* 30 F.3d 1533, 1537 (D.C.Cir.1994) (reviewing de novo FCC's interpretation of state law); *see also NLRB v. Better Building Supply Corp.,* 837 F.2d 377, 378 (9th Cir.1988) (giving no deference to Board's interpretation of bankruptcy law).

■ The Virginia trespass statute upon which the Board relied states as follows:

If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, or any portion or area thereof, after having been forbidden to do so, either orally or in writing, *by the owner, lessee, custodian or other person lawfully in charge* thereof . . . he shall be guilty of a Class 1 misdemeanor.

VA.CODE ANN. § 18.2–119 (Michie 1996) (emphasis added). Under the statute, it is clear that the owner or lessee of the sidewalks had the authority to exclude the organizers. But there is no dispute (with one possible exception) that Farm Fresh was not the owner or lessee. The NLRB relied instead on the statutory language authorizing a "custodian or other person lawfully in charge" to bar entry. The

Board concluded that the provisions of the lease agreements requiring Farm Fresh to keep the sidewalks clean were sufficient to place the company within those categories. We disagree.

The Colonial Avenue lease agreement is typical. In the relevant paragraph, Farm Fresh agreed to "keep the demised premises, entryways and sidewalks adjacent to said premises clean and free from obstruction, rubbish, dirt, snow and ice." Lease ¶ 14 (J.A. at 381–82). Although this provision may give Farm Fresh the power to remove "rubbish, dirt, snow and ice," Union organizers do not fall within those categories. Nor may they be categorized as "obstruction[s]"—there is no evidence that they obstructed the entrances in any way.

■ It is true that the leases' maintenance provisions might permit Farm Fresh to be characterized as a "custodian" in the sense of "janitor," but there is no indication that Virginia law permits janitors to file trespass actions against citizens who stand on Virginia sidewalks. Rather, the canon of *ejusdem generis* ("of the same kind or class") counsels that we read the phrase "custodian or *other* person lawfully in charge" as indicating that "custodian" means a person who is "in charge," or is "in control." *See Hall v. Commonwealth,* 188 Va. 72, 49 S.E.2d 369, 371 (1948) ("The only purpose of this law is to protect the rights of the owners or those in lawful control of private property."). And there is no evidence in the leases that Farm Fresh was intended to have control over

the appurtenant sidewalks. To the contrary, each lease makes clear that with respect to the sidewalks, Farm Fresh has nothing more than a right to "the use in common with" the other co-tenants. J.A. at 373 ¶ 2 (Colonial Ave.).[6] Indeed, with respect to at least one of the stores, Merrimack Trail, it is quite clear that Farm Fresh does not have control, as the lease expressly states that the "sidewalks ... shall be at all times subject to the exclusive control and management of landlord." J.A. at 523.[7] Farm Fresh's mere shared right of use strongly suggests that it lacks the power to exclude those it dislikes from the shopping center's common sidewalks. Indeed, to permit Farm Fresh to eject Union organizers would be to permit it to expel Salvation Army bell-ringers,[8] a power we are loathe to assume a shopping center landlord intended to convey to its tenants.

The Board based its contrary conclusion on its view that, under the statute, "it is clear that the right to invoke the trespass statute is not restricted to the owner or lessee of the property; rather it extends broadly to a 'custodian' or 'person lawfully in charge' of the property." *Farm Fresh, Inc.,* 326 N.L.R.B. No. 81, at 5. This is not analysis; it is mere restatement of the statutory language. Yes, the statute does not restrict its scope to owners or lessees; it also extends to custodians and others lawfully in charge. However, that fact does not cast light on the definition of the latter category, or justify the Board's de-

---

**6.** *See* J.A. at 523 (Merrimack Trail) (granting use of the sidewalks in common with other tenants of landlord in the shopping center); J.A. at 196 (Shore Drive) ("All portions of the shopping center land ... not covered by buildings, shall be common area equally available and shared in common by all tenants of the shopping center, their employees, agents, customers and invitees.").

**7.** NLRB counsel contend that we must ignore this paragraph of the Merrimack Trail lease because the Union did not specifically call it to the Board's attention. But the entire lease was in evidence, the Board expressly relied on its provisions, and the Union argued that taking the lease as a whole Farm Fresh lacked

the right to control the sidewalk. *See* J.A. at 690–91 (Union Br. in Answer to Farm Fresh's Exceptions). That is sufficient to take the issue out of NLRA § 10(e), 29 U.S.C. § 160(e), which precludes a reviewing court from considering an objection that has not been urged before the Board.

**8.** In fact, if Farm Fresh were permitted to exclude the organizers, it could be *required* to exclude other solicitors, including in some circumstances charitable solicitors, in order to avoid a charge of anti-union discrimination. *See Lucile Salter Packard Children's Hosp. v. NLRB,* 97 F.3d 583, 587 & n. 4 (D.C.Cir.1996).

scription of the statute as "broad" and "expansive." *Id.* The NLRB cited only a single Virginia case in support of its position, *Hall v. Commonwealth*, 188 Va. 72, 49 S.E.2d 369 (1948). But *Hall* says nothing more than that "[t]he only purpose of this law is to protect the rights of the owners or those in lawful control of private property." *Id.* at 371. If anything, this quotation supports the conclusion, drawn above, that the statutory term "custodian" was simply intended as a synonym for one "in lawful control." Nor is the analysis advanced by learning that, unsurprisingly, the statute's "underlying purpose" is "protecting private property rights." *Farm Fresh, Inc.*, 326 N.L.R.B. No. 81, at 5. The question at issue is whether Farm Fresh has a property right that gives it the power to exclude others from the premises involved.

In its intervenor brief, Farm Fresh offers another ground for sustaining the Board's decision. Although it is unable to find a Virginia case on point, it urges us to adopt the District of Columbia Court of Appeals' interpretation of that jurisdiction's unlawful entry statute. In *Woll v. United States*, 570 A.2d 819 (D.C.1990), the Court of Appeals concluded that a clinic located in an office building could invoke the statute to eject protesters, who were blocking patients' access, from an interior corridor shared in common with the landlord and other tenants. Farm Fresh argues that the Virginia statute should be read the same way, and hence should permit it to expel the Union organizers from the sidewalks it shares with other shopping center tenants.

 We do expect that Virginia courts would recognize something akin to an implied easement of necessity on behalf of a lessee to ensure access to its leased property over the property of the land-

lord.[9] The existence of such an easement may be established if its advocate can show, inter alia, that "the easement is reasonably necessary for the enjoyment of the parcel" and that "other reasonable means of ingress and egress are lacking." *Carstensen v. Chrisland Corp.*, 247 Va. 433, 442 S.E.2d 660, 663 (1994); *see Russakoff v. Scruggs*, 241 Va. 135, 400 S.E.2d 529, 532 (1991). This requires "more than simple convenience," and "generally will depend upon the circumstances of the particular case." *Russakoff*, 400 S.E.2d at 533 (internal quotation omitted). Moreover, where an easement is implied by necessity, its scope "must reflect the necessity which justifies the easement's existence." 7 THOMPSON ON REAL PROPERTY 466 (1994); *see Hudson v. American Oil Co.*, 152 F.Supp. 757, 765 (E.D.Va.1957) (stating that "the circumstances for which the implication arises, are to be looked to in order to ascertain the scope and extent of the easement") (internal citation omitted). Since "there is no express agreement, courts will be careful in interpreting how far the use of such an easement may go." 7 THOMPSON ON REAL PROPERTY 466.

We are unable to see why the power to expel peaceful organizers from an adjacent sidewalk is reasonably necessary for the use of leased property. To the contrary, both the courts and the Board itself have repeatedly rejected the notion that easements of access entitle employers to exclude union representatives from adjacent common areas. *See, e.g., O'Neil's Markets v. United Food and Commercial Workers' Union*, 95 F.3d 733, 739 (8th Cir.1996) (holding that under Missouri law, neither a "non-exclusive easement of ingress, egress, and parking," nor "the exercise of control over the sidewalk and parking areas by repairing and maintaining the property," authorize employer to exclude organizers from sidewalk).[10] We have unearthed no

9. *Cf. Carstensen v. Chrisland Corp.*, 247 Va. 433, 442 S.E.2d 660, 663 (1994) (recognizing that implied easement can be established for one land owner over property of another originating from common grantor); *Keen v. Paragon Jewel Coal Co.*, 203 Va. 175, 122 S.E.2d 543, 546, 547 (1961) (finding implied easement for lessee over land owned by entity that granted fee to lessee's landlord).

10. *See Weis Markets*, 325 N.L.R.B. 871, 883–85 (1998) (holding under Pennsylvania law

Virginia case in which an easement was implied, or the scope of an easement defined, by reference to anything other than the extent of the need for access.[11] Indeed, even in *Woll,* the only case cited by Farm Fresh in support of its argument, the D.C. Court of Appeals found that the protesters who were expelled had "impeded patients seeking to enter and leave" the clinic. 570 A.2d at 820; *see also O'Neil's Markets,* 95 F.3d at 739 (holding that employer cannot exclude handbillers unless they interfere with the right of employer, employees and customers to use the easement property). But there is nothing in the facts of this case to support a claim that the right to eject the organizers was reasonably necessary to effectuate an implied easement of access. There was no allegation that the Union's representatives impeded access to the stores or that they interfered in any way with Farm Fresh's obligation to clean and maintain the sidewalks.

■ Accordingly, we find that Farm Fresh lacked the requisite property interest to exclude the organizers from those sidewalks not covered by its leases. Although we reach this conclusion without reference to any burdens of proof, we note that the applicable burdens further confirm our analysis. Under *Indio,* it is the employer that has the "threshold burden

... to establish that it had ... an interest which *entitled* it to exclude individuals from the property." 323 N.L.R.B. at 1141. Lacking any language in its lease agreements or any case law regarding an implied easement theory that would support a right to exclude the organizers, Farm Fresh is unable to meet that burden. Moreover, under Virginia law, the burden is also on the advocate of an implied easement to establish "by clear and convincing evidence" that the easement is reasonably necessary for the enjoyment of its property—a determination that depends on "the facts and circumstances" of each case. *Carstensen,* 442 S.E.2d at 663–64. Hence, even if Virginia law would in some circumstances support an implied easement of the scope urged by Farm Fresh, the company has failed to meet its burden of proof in this case because it has offered no evidence whatsoever to support the need for an easement of that scope at the four stores at issue here.

Finally, we note that although the Board wrongly concluded that Farm Fresh had the requisite property interest based solely on the maintenance provisions of its leases, the lease of one of the four stores appears to grant Farm Fresh the lease to the sidewalk itself.[12] The Board may, of course, consider this point on remand.

that employer's nonexclusive right to use common areas is insufficient to exclude union picketers from sidewalk); *Food for Less,* 318 N.L.R.B. 646, 649–50 (1995) (holding under Missouri law that employer failed to demonstrate that its "maintenance of the parking lot transformed the easement interest set forth in the lease into a more substantial property right providing the legitimate power to expel"), *enforced in pertinent part sub nom., O'Neil's Markets,* 95 F.3d at 739; *Johnson & Hardin,* 305 N.L.R.B. at 690, 694–95 (holding under Ohio law that possessor of access easement cannot expel organizers unless they interfere with ingress or egress); *Giant Food,* 295 N.L.R.B. 330, 332 (1989) (same as *Weis Markets*).

11. *See, e.g., Carter v. County of Hanover,* 255 Va. 160, 496 S.E.2d 42, 46 (1998) ("[A]n easement by necessity will not be found if there is another way of access, although less

convenient and which will involve some labor and expense to develop."); *Russakoff,* 400 S.E.2d at 532–33 (finding easement for lakeside land owner without which it could not attain access to lake); *Keen,* 122 S.E.2d at 546 ("[T]he only way by which defendant can reach the public highway with coal mined from its leased land is ... over [plaintiff's] land."); *see also Carstensen,* 442 S.E.2d at 663–64 (holding that lack of vehicular access alone does not necessarily justify implication of easement for the enjoyment of a parcel of land).

12. *See* J.A. at 219 (Victory Boulevard) ("The demised premises ... include the building ... existing thereon and the sidewalk. ..."). *But see Farm Fresh, Inc.,* 326 N.L.R.B. No. 81, at 19 (ALJ Decision) (finding inconsistent provisions and resolving ambiguity against Farm Fresh because of *Indio* burden).

### III

We conclude that the NLRB's determination that Union organizers were lawfully ejected from the snack bar of one of Farm Fresh's stores was based upon a factual finding that is unsupported by substantial evidence. We further conclude that the Board's determination that organizers were lawfully excluded from the sidewalks of four other stores was based on an erroneous reading of Virginia law. Accordingly, we grant the Union's petition for review and remand the case for further proceedings consistent with this opinion. In addition, because the employer has not challenged the Board's findings that it violated section 8(a)(1) in those respects reflected in the Decision and Order below, the Board's cross-petition for enforcement of its Order against the company is granted.