In the

# United States Court of Appeals
### For the Seventh Circuit

Nos. 10-3921 & 11-1292

ROUNDY'S INC.,

*Petitioner/Cross-Respondent,*

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner,*

and

MILWAUKEE BUILDING and CONSTRUCTION
TRADES COUNCIL, AFL-CIO,

*Intervening Respondent.*

Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board.
No. 30-CA-17185

ARGUED SEPTEMBER 28, 2011—DECIDED MARCH 9, 2012

Before BAUER, WOOD, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Roundy's Inc. operates grocery stores throughout southeastern Wisconsin under the name Pick 'N Save. Milwaukee Building and Construction Trades Council, AFL-CIO (the Union), a central body of construction industry local unions in the Milwaukee area, met with Roundy's to discuss its concerns that Roundy's was using nonunion contractors who didn't pay employees the prevailing area standard wages in the construction and remodeling of its stores. Unsatisfied with Roundy's response (Roundy's took the position that the selection of contractors was up to its landlords, but the administrative law judge (ALJ) found that Roundy's had some control over the selection process), the Union protested and urged a consumer boycott of Roundy's stores. Union representatives stood outside Roundy's stores in the common areas to distribute handbills accusing Roundy's of saving money by using cheap labor to build and remodel its stores and not passing those savings on to its customers, asking customers not to patronize Pick 'N Save, informing customers that they would achieve savings by shopping at competitor stores, pointing out price differences in Roundy's products with competitors, and even handing out coupons for competitors' products. Needless to say, the handbills were extremely unflattering to Roundy's, some even pictured a rat to represent the company. In response, Roundy's ejected the handbillers from the property.

The General Counsel for the National Labor Relations Board (Board) issued a complaint against Roundy's alleging that it violated Section 8(a)(1) of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(1), for its

discriminatory practice of prohibiting the Union from handbilling while permitting nonunion solicitations and distributions on the property. After an evidentiary hearing before an ALJ on the discrimination theory, the Board remanded for the ALJ to consider whether Roundy's, as a lessee with nonexclusive easements in the common areas where the Union was handbilling, held a sufficient property interest under Wisconsin law to oust nonemployee handbillers. Upon rehearing, the ALJ found that as a nonexclusive easement holder at 23 of the stores at issue, Roundy's did not have a state property right to exclude the handbillers, and thus, Roundy's violated the Act by preventing the Union from engaging in protected Section 7 activities, 29 U.S.C. § 157, at those locations. The Board affirmed, adopting the ALJ findings and conclusions in this respect. We agree with the Board's interpretation of Wisconsin law and find that the Board's application of this law to Section 8(a)(1) of the Act had a reasonable basis in law. Thus, we deny Roundy's petition for review and grant the Board's cross-petition for enforcement of its order.

## I. Facts

From April to June 2005, Union representatives distributed informational handbills in front of 26 Roundy's stores around the Milwaukee metropolitan area. Some of the stores are free standing and others are in shopping malls. For reasons explained below, this appeal only concerns 23 of those stores where Roundy's had entered into leases for the stores and held nonexclusive

easements over the common areas, including the private sidewalks in front of the stores and parking lots, where the handbilling took place. The handbilling was peaceful; the Union representatives didn't picket and the ALJ found no evidence that they obstructed or interfered with customers' access to or egress from the stores. The Union urged a consumer boycott of Roundy's stores for its alleged use of contractors who did not adhere to area wage standards. As we noted, the handbills were extremely unflattering to Roundy's, and as a result, Roundy's took efforts to expel the protestors, in some instances, calling the police.

The parties stipulated to the relevant lease terms and property interests at each of the store locations. The nonexclusive easements generally permit use of the common areas by Roundy's and its customers, employees, and invitees, as well as the landlord and other tenants of the shopping centers, and their customers, employees, and invitees. For example, a majority of the store leases contain the following provision:

> Tenant is hereby granted a *nonexclusive easement*, right and privilege for itself and its customers, employees and invitees and the customers, employees and invitees of any subtenant, concessionaire or licensee of Tenant to use the [common areas] without charge with Landlord and other tenants and occupants of the Shopping Center and their customers, employees and invitees; provided, however, no use of the [common areas] shall be made which detracts from the first-class

> nature of the Shopping Center or obstructs access
> to or parking provided for customers of the Shop-
> ping Center.

(emphasis added). A few leases provide that the ease-
ment shall be used for all customary and proper pur-
poses. Numerous leases also state that "the landlord
may, with the prior consent of tenant, . . . promulgate
reasonable, nondiscriminatory rules and regulations
for the use of the common areas . . . ."

The leases also contain language setting forth either
Roundy's or the landlord's maintenance obligations
with respect to the common areas. A number of the
leases require the landlord to maintain the common
areas "in accordance with good shopping practice," but
most also require Roundy's to pay its proportionate
share of those expenses. Other leases require Roundy's
to pay all costs and expenses for maintaining the
common areas; a few leases require Roundy's to operate
and maintain the common areas "in accordance with
good real estate practice"; and another gives Roundy's
the right to take over the landlord's common area re-
sponsibilities, but there is no evidence that Roundy's
agreed to take on those responsibilities. None of the
leases provide Roundy's with explicit authority to eject
trespassers or other unwanted parties from the common
areas.[1]

---

[1] The ALJ provided a detailed discussion of the Union's
conduct at each store and the lease terms of the individual

(continued...)

Brian Pikalek, Roundy's loss prevention district manager, supervises security issues for part of Roundy's operations. He testified that it's Roundy's practice to exclude what he described as "undesirable" visitors, such as panhandlers, drunks, skateboarders, handbillers, or vagrants, from the common areas in front of Roundy's leased stores. Such "undesirables" are asked to leave the property; if they do not leave, the police are called to remove them. It has never been Roundy's practice to consult with the landlord either before or after ejecting individuals from the common areas and no evidence was presented that the landlords were aware of Roundy's practice of ejecting third parties from the common areas.

## II. Procedural History

The Board's General Counsel issued a complaint against Roundy's alleging that it violated Section 8(a)(1) of the Act by prohibiting the Union representatives from handbilling on property owned or leased by Roundy's while permitting nonunion solicitations and distributions on such property. Before the first administrative hearing, the parties stipulated to the events that occurred at each store. At the initial hearing, neither party presented evidence to show that Roundy's possessed a sufficient property interest to interfere with the Union's

---

[1] (...continued)
stores. Although we rely on these findings, we find it unnecessary to set them out in detail here.

handbilling on the subject properties. The ALJ asked the General Counsel whether the parties' joint stipulation meant that handbilling took place on property owned by Roundy's. He answered "yes." At that time, the General Counsel had not yet received the leases it had sub-poenaed from Roundy's and didn't receive the leases until after its case-in-chief.

As discovered later, Roundy's only held nonexclusive easements in the common areas of the 23 stores at issue in this appeal. In his post-hearing brief, the General Counsel argued that Roundy's interference with the Union's handbilling violated the Act notwithstanding its discriminatory intent because Roundy's failed to meet its burden of proving an exclusionary property interest at the locations where handbilling took place. The parties refer to this as the "property right" theory. The ALJ rejected this argument because the General Counsel had not raised the property right theory during the hearing and instead, alleged in the complaint that the Union handbilled "on [Roundy's] property and/or property leased by [Roundy's]." The ALJ explained:

> The gravamen of the complaint was that [Roundy's'] prohibition of the handbilling was unlawful because it permitted similar activity by nonunion entities on that same property. This is essentially a disparate treatment theory, and the theory upon which the case was tried. The parties assumed at all stages of this litigation that [Roundy's] had a property interest sufficient to oust the handbillers. Indeed, the General Coun-

sel's basic argument was that [Roundy's], having such property interest, permitted similar conduct by nonunion entities. It is too late now—and a potential due process problem—for the General Counsel to change the theory of the case on brief.

The ALJ issued its decision finding that Roundy's violated Section 8(a)(1) of the Act by discriminatorily preventing union agents from distributing handbills.

The General Counsel filed an exception to the ALJ's refusal to find a violation on the property right theory. The Board acknowledged that the issue of Roundy's property interest appeared to be uncontested during the hearing but found that the existence of a sufficient property interest to exclude is a threshold burden that the employer must meet. Because Roundy's reasonably believed that it did not need to prove its property interest during the hearing before the ALJ, the Board remanded for further factual development.

On remand, the ALJ allowed the parties to present evidence on the property right theory, and at the conclusion of the hearing, the parties expressed satisfaction that the record was complete. The ALJ issued a supplemental decision finding that Roundy's lacked a sufficient property interest at 23 of the 26 stores, and thus, Roundy's' interference with the handbillers at those locations violated Section 8(a)(1). The Board issued a supplemental decision affirming the ALJ's findings in this respect. The ALJ dismissed the General Counsel's claims as to one store, which the General Counsel doesn't dispute. The ALJ found that Roundy's had a sufficient

property interest at the remaining two stores, but nonetheless found that Roundy's violated Section 8(a)(1) at those locations under the discrimination theory. The Board severed those stores and they are not part of this appeal.

Roundy's also filed an exception with the Board because of the ALJ's refusal to hear expert testimony from Michael Ostermeyer, a Wisconsin lawyer specializing in real property matters, who sought to opine about Wisconsin property law on easements. The ALJ informed Roundy's that it could simply incorporate Mr. Ostermeyer's legal analysis in its argument. The Board found that the ALJ acted within his discretion to exclude Mr. Ostermeyer's testimony.

### III. Analysis

We have jurisdiction to review the Board's order pursuant to Section 10(e) and (f) of the Act, 29 U.S.C. § 160(e) and (f). In reviewing the Board's decision, we give substantial deference to both its findings of fact and its interpretations of the Act. *Naperville Ready Mix, Inc. v. NLRB*, 242 F.3d 744, 751 (7th Cir. 2001). When reviewing the record, we defer to the Board's inferences and conclusions drawn from facts, but we ensure that its findings fairly and accurately represent the record. *See NLRB v. Clinton Elecs. Corp.*, 284 F.3d 731, 737 (7th Cir. 2002). "[W]e must determine whether the Board's decision is supported by substantial evidence and whether its legal conclusions have a reasonable basis in law." *Sears, Roebuck & Co. v. NLRB*, 349 F.3d 493, 502 (7th

Cir. 2003) (quotations omitted). "Substantial evidence exists if a reasonable mind might accept relevant evidence as adequate to support the Board's conclusion." *Nat'l Steel Corp. v. NLRB,* 324 F.3d 928, 931 (7th Cir. 2003).

We defer to the Board's interpretation of the Act unless its legal conclusions are "irrational or inconsistent with the Act." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. NLRB,* 544 F.3d 841, 848 (7th Cir. 2008). Where a matter involves analysis of state law for which the Board has no special expertise, however, our review is de novo. *See United Food & Commercial Workers Int'l Union Local 400 v. NLRB,* 222 F.3d 1030, 1035 (D.C. Cir. 2000) (reviewing de novo Board's determination of whether employer had sufficient property interest to exclude union organizers because Board has no special expertise in interpreting Virginia law); *see also Bob Evans Farms, Inc. v. NLRB,* 163 F.3d 1012, 1019 (7th Cir. 1998) (stating that extent to which subject matter invokes special expertise of Board is significant when determining applicable standard of review); *NLRB v. Americare-New Lexington Health Care,* 124 F.3d 753, 757 (6th Cir. 1997) ("[C]ourts do not defer to the Board when it decides a legal question beyond its expertise."); *Jones Dairy Farm v. NLRB,* 909 F.2d 1021, 1028 (7th Cir. 1990) ("We owe the Board no special deference in matters of contractual interpretation.").

Where the Board adopts the ALJ's findings of fact and conclusions of law, as it did in relevant part here, we review the ALJ's determinations. *See SCA Tissue N. Am.*

*LLC v. NLRB,* 371 F.3d 983, 988 (7th Cir. 2004); *see also Spurlino Materials, LLC v. NLRB,* 645 F.3d 870, 877-78 (7th Cir. 2011).

## A.  Remand for Further Proceedings

Roundy's argues that the Board erred in remanding the case for further evidence on the General Counsel's property right theory because this theory was not raised in the complaint or during the hearing before the ALJ. In fact, during the initial hearing, the General Counsel informed the ALJ that Roundy's owned the properties. The Board, however, reasoned that Roundy's had the threshold burden of demonstrating a sufficient property interest entitling it to exclude handbillers, so it remanded the case to afford Roundy's an opportunity to meet that burden.[2]

---

[2] The General Counsel argues that we cannot consider this argument because Roundy's failed to object to the Board's remand order. Although a party before the Board can, "because of extraordinary circumstances," file for reconsideration and state "with particularity the material error claimed," 29 C.F.R. § 102.48(d)(1), a motion for reconsideration need not be filed to exhaust administrative remedies, *see* 29 C.F.R. § 102.48(d)(3). The procedures in Section 102.48(d) are not mandatory; they help to ensure that the Board has adequate notice of objections. *See NLRB v. Wayne Transp., a Div. of Wayne Corp.,* 776 F.2d 745, 749 n.5 (7th Cir. 1985). Roundy's wasn't required to file a motion for reconsideration to assert its dissatisfaction with the Board's ruling. The Board was aware of Roundy's

(continued...)

We find that the Board acted within its discretion in remanding the case for further development of the property right theory. The Second Circuit recently addressed a similar issue in *Service Employees International Union, Local 32BJ v. NLRB*, 647 F.3d 435 (2d Cir. 2011). In that case, the Board had determined that it lacked authority to consider an issue that was not raised by the General Counsel before the ALJ. *Id.* at 446. The Second Circuit disagreed, reasoning that the "Board *may* identify a violation of the Act that was not specifically alleged in the complaint or advanced by the General Counsel *if* the parties had sufficient notice to satisfy due process." *Id.* at 447. The court remanded the case because the Board misunderstood its discretion to decide uncharged issues that are "closely connected to the subject matter of the complaint and ha[ve] been fully litigated." *Id.* at 447-48 & n.7. The court stated that the Board could consider whether reaching the issue would comport with due process. *Id.* at 449. The court concluded that "if the Board finds that due process concerns do preclude it from reaching this issue, it should determine whether remand is appropriate . . . to provide the Respondent with an opportunity to litigate a potential violation of the Act so as to remedy any prejudice the Respondent might have suffered by the

---

[2] (...continued)
position that the General Counsel had waived the property right theory; the Board disagreed. A motion to reconsider this ruling would not have furthered the purpose of Section 102.48(d).

Board identifying a violation on a theory not alleged in the complaint or advanced by the General Counsel." *Id.* at 449 (citing *Enloe Med. Cntr.*, 346 NLRB 854, 855-56 (2006)).

We follow the reasoning of the Second Circuit and find that the Board acted within its discretion in remanding the property right theory, which is closely connected to the subject matter of the underlying complaint. The Board concluded that "the existence of a sufficient property interest is a threshold burden that the employer must carry in order to show that it is entitled to exclude others from the property in question," citing *Calkins d/b/a Indio Grocery Outlet*, 323 NLRB 1138, 1141 (1997), *enforced*, *NLRB v. Calkins*, 187 F.3d 1080 (9th Cir. 1999). As more fully discussed below, we find this burden-shifting rule rational and consistent with the Act, and therefore, entitled to deference. The Board correctly recognized that Roundy's reasonably believed it did not have to prove its property interest because the issue had gone uncontested during the hearing before the ALJ. Accordingly, the Board remanded for a full evidentiary hearing on the issue. Roundy's was given the opportunity to present evidence and argument, and as such, had adequate due process.

We emphasize that the Board had *discretion* to remand and could have concluded that General Counsel was barred from raising the issue. *See Laborers Local 190 (VP Builders, Inc.)*, 355 NLRB No. 90, 2010 WL 3279401, *4 (declining to remand case for ALJ to address an unlitigated theory because doing so would give "the General

Counsel an unwarranted 'second bite of the apple' by permitting litigation of an issue that he has effectively chosen not to pursue"). This case would have warranted such a conclusion considering that the General Counsel alleged in the complaint that the handbilling occurred on property owned or leased by Roundy's and essentially disavowed reliance on a property right theory before the ALJ. *See Paul Mueller Co.*, 332 NLRB 1350, 1350-51 (2000) (declining to give General Counsel a "second bite of the apple" through remand that would have effectively permitted litigation of a theory General Counsel had disclaimed).

We, however, uphold the Board's decision to remand given that Roundy's had the burden to show it possessed an exclusionary property interest as a threshold matter (more on this later), this issue was closely connected to the subject matter of the underlying complaint, and Roundy's was afforded a full and fair opportunity to present argument on this issue on remand.

### B.  Exclusion of Expert Witness

Roundy's asserts that it was prejudicial error to exclude its expert, Mr. Ostermeyer, from testifying about Wisconsin property law and the nature of Roundy's' property interests at each of its leased facilities. The ALJ barred Mr. Ostermeyer's testimony because he intended to testify as to an ultimate legal opinion, citing Rule 702 of the Federal Rules of Evidence. The ALJ informed Roundy's that it could submit Mr. Ostermeyer's legal analysis in its brief. The Board found that the ALJ

acted within his discretion in excluding Mr. Ostermeyer's testimony in light of the ALJ's obligation to make a complete but nonvoluminous record, and further reasoned that Mr. Ostermeyer merely sought to present legal conclusions regarding Wisconsin law that the ALJ was capable of interpreting without expert opinion.

We review the Board's evidentiary rulings for abuse of discretion. *See NLRB v. Domsey Trading Corp.*, 636 F.3d 33, 37 (2d Cir. 2011). The Board is required to conduct its evidentiary proceedings in accordance with the Federal Rules of Evidence "so far as practicable." *See* 29 U.S.C. § 160(b); *see also NLRB v. Augusta Bakery Corp.*, 957 F.2d 1467, 1479 (7th Cir. 1992). We find no abuse of discretion in the ALJ's decision to bar Mr. Ostermeyer from testifying. Rule 704(a) of the Federal Rules of Evidence states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." The committee notes to that Rule explain however that Rule 702, which requires that opinion be helpful to the trier of fact, and Rule 403, which provides for exclusion of evidence that wastes time, "afford . . . assurance[ ] against the admission of opinions which would merely tell the [trier of fact] what result to reach . . . ." Fed. R. Evid. 704, 1972 advisory committee notes. Rules 702 and 704 "prohibit experts from offering opinions about legal issues that will determine the outcome of a case." *See United States v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996); *see also Good Shepherd Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (affirming district court's ruling that law professor couldn't testify to conclusions that city's actions violated Fair Housing Amendments Act). For instance, we have explained:

> Legal arguments are costly enough without being the subjects of "experts'" depositions and extensive debates in discovery, in addition to presentations made directly to the judge. If specialized knowledge about tax or demutualization would assist the judge, the holders of that knowledge can help counsel write the briefs and present oral argument. In this court each side is represented by two law firms, and a professor of law also has signed plaintiffs' briefs. Enough!

*RLJCS Enters., Inc. v. Prof. Benefit Trust Multiple Emp'r Welfare Benefit Plan & Trust*, 487 F.3d 494, 498 (7th Cir. 2007) (citations omitted); *see also Sunstar, Inc. v. Alberto-Culver Co.*, 586 F.3d 487, 495 (7th Cir. 2009) (explaining that "judges are experts on law," and so "when a federal court applies state law, the court does not permit expert testimony on the meaning of the 'foreign' law."); *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 632 (7th Cir. 2010) (Posner, J.,concurring) (same).

The court's reasoning in *RLJCS* is particularly instructive here. Mr. Ostermeyer's opinion as to Wisconsin property law amounts to legal arguments that should be presented to the court in counsel's analysis, not expert opinion testimony. The ALJ instructed Roundy's to include Mr. Ostermeyer's interpretation of Wisconsin state property law in its brief and Roundy's presumably heeded this instruction. As such, we find not only no abuse of discretion, but also no prejudice. *See NLRB v. Midwestern Pers. Servs., Inc.*, 508 F.3d 418, 427 (7th Cir. 2007) (remand not necessary "unless there is reason to

believe that the remand might lead to a different result," (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989))).

## C.  Violations of Section 8(a)(1)

The General Counsel asserts that Roundy's violated Section 8(a)(1) of the Act by ousting the Union handbillers, who were engaged in protected Section 7 activity, from private property because Roundy's didn't have an exclusionary right under its nonexclusive easements. Section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7] . . . ." 29 U.S.C. § 158(a)(1). Section 7 of the Act provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.

Nonemployee organizers are subject to far greater restrictions with respect to their right to access private property than employee organizers. *See generally NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105 (1956) and *Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992). "Nonemployee" means union representatives who are not employees of the targeted employer. *See O'Neil's Markets v. NLRB*, 95 F.3d 733, 736 n.4 (8th Cir. 1996). An employer may generally "post his property against nonemployee distribution of union literature if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message."

*Babcock*, 351 U.S. at 112. It is only where such access is infeasible that it is proper to balance the employees' and employers' rights. *Lechemere*, 502 U.S. at 538; *see also O'Neil's Markets*, 95 F.3d at 736-37.

However, an employer has no right under the *Babcock/Lechmere* framework to exclude union representatives engaged in Section 7 activity from areas where it lacks an exclusionary property interest. *O'Neil's Markets*, 95 F.3d at 738-39 (citing *Johnson & Hardin Co.*, 305 NLRB 690 (1991), *enf'd*, 49 F.3d 237 (6th Cir. 1995)); *see also Glendale Assoc. v. NLRB*, 347 F.3d 1145, 1151 (9th Cir. 2003) ("Since *Lechmere* was decided, this Court, along with other Circuits and the Board, have found *Lechmere* to be inapplicable to cases where an employer excluded nonemployee union representatives in the absence of a state property right to do so."). The Supreme Court has explained that "[t]he right of employers to exclude union organizers from their private property emanates from state common law, and while this right is not superseded by the NLRA, nothing in the NLRA expressly protects it." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 217 n.21 (1994). Thus, "an employer's exclusion of union representatives from private property as to which the employer lacks a property right entitling it to exclude individuals . . . violates Section 8(a)(1), assuming the union representatives are engaged in Section 7 activities." *Calkins*, 187 F.3d at 1088 (quotations omitted).

Courts have found, as consistent with *Lechmere,* that an employer must have a property right to exclude even nonemployee protestors that are engaged in

nonorganizational activities directed at consumers. *See, e.g., O'Neil's Markets*, 95 F.3d at 737; *see also Calkins*, 187 F.3d at 1088-89. "Although *Babcock* and *Lechmere* involved organizational rights, section 7 protects other, non-organizational activities," such as a union's peaceful area standards activity. *O'Neil's Markets*, 95 F.3d at 737; *see also Calkins*, 187 F.3d at 1089 (The "protection of consumer boycott and area standards picketing falls within the plain meaning of . . . Section 7.").[3] But area-standards handbilling may warrant less protection than even nonemployee organizational activity under Section 7. *See Sandusky Mall Co. v. NLRB*, 242 F.3d 682, 691 (6th Cir. 2001); *see also Salmon Run Shopping Ctr. LLC v. NLRB*, 534 F.3d 108, 115 n.1 (2d Cir. 2008).

Roundy's urges us to place the burden on the General Counsel to show that Roundy's did not have an exclusionary property interest,[4] stating that a careful

---

[3] Roundy's states in a conclusory manner that "General Counsel did not carry its initial burden of showing that the Council's handbillers were engaged in activity protected by Section 7." Roundy's argument, consisting of one sentence, is undeveloped and not supported by pertinent authority, and therefore waived. *Argyropoulos v. City of Alton*, 539 F.3d 724, 739 (7th Cir. 2008). The Board found that the handbilling was protected concerted activity; we have no occasion to review that finding.

[4] Roundy's points out that some former Board members have taken the minority position that the respondent should have the initial burden of merely showing a colorable

(continued...)

reading of *Lechmere* reveals that it does not require the employer to prove an exclusionary interest in cases involving nonemployee union solicitors. The Board however, since *Lechmere,* has consistently required the employer to meet a threshold burden of establishing "that it had at the time it expelled the union representatives, an interest which *entitled* it to exclude individuals from the property." *See Calkins*, 323 NLRB at 1141-42, *enf'd* 187 F.3d 1080; *see also Research Found. of the State Univ. of N.Y. at Buffalo*, 355 NLRB No. 170, 2010 WL 3446127, *2. The Board has reasoned that if the employer fails to meet this burden, "there is no actual conflict between private property rights and Section 7 rights, and the employer's actions therefore will be found violative of Section 8(a)(1)." *NLRB v. A & E Food Co. 1, Inc.*, 339 NLRB 860, 862 (2003) (quotations omitted).

Other circuit courts agree with this rationale, explaining that "when an employer lacks an interest entitling it to exclude individuals engaged in Section 7 conduct, *Lechmere*'s accommodation analysis is not triggered." *Calkins*, 187 F.3d at 1088; *see also Glendale Assoc.*, 347 F.3d at 1153 (explaining that employers' property rights must be respected, but employers need not be accorded

---

[4] (...continued)

property right, with the burden then shifting back to General Counsel to prove that the respondent lacked an exclusionary interest. *See Farm Fresh, Inc.*, 326 NLRB 997, 1002 n.26, 1003 n.1. (1998) (Board Members Hurtgen and Gould); *Victory Markets, Inc. d/b/a Great Am.*, 322 NLRB 17, 23 n.21 (1996) (Board Member Cohen).

greater property rights than they actually possess); *United Food & Commercial Workers Int'l Union Local 400 v. NLRB*, 222 F.3d 1030, 1034 & n.5 (D.C. Cir. 2000) ("If the employer is unable to meet the burden of demonstrating the requisite property interest, its exclusion of union agents from the area constitutes a violation of section 8(a)(1)."), and cases cited therein. The Court's decision in *Lechmere* reflects a concern for private property rights and leaves undisturbed previous Board holdings involving employers who lack a sufficient property right to exclude. *O'Neil's Markets*, 95 F.3d at 738-39.

The Board's rule that the employer must meet a threshold burden of showing a sufficient property interest to invoke the *Lechmere* framework (even in cases involving area standards handbilling targeted at an employer's customers) is not inconsistent with *Lechmere* and is a rational interpretation of the Act, so we decline to adopt the alternative burden-shifting rule proposed by Roundy's. We must, therefore, decide whether Roundy's met its burden of showing, under Wisconsin law, that its nonexclusive easements gave it an exclusionary interest to oust the peaceful handbillers from the common areas. *See Glendale Assocs.*, 347 F.3d at 1151. We conclude that it has not.

Because the Board has no specialized expertise in interpreting state property law, we review this issue de novo. *See United Food*, 222 F.3d at 1035; *see also Borek Cranberry Marsh, Inc. v. Jackson Cnty.*, 785 N.W.2d 615, 621 (Wis. 2010). Wisconsin courts have not addressed the precise issue before us, but have set forth general principles that

guide our analysis. "An easement is an interest in land which is in the possession of another, creating two distinct property interests: the dominant estate, which enjoys the privileges granted by the easement, and the servient estate, which permits the exercise of those privileges." *Gallagher v. Grant-Lafayette Elec. Coop.*, 637 N.W.2d 80, 85 (Wis. Ct. App. 2001). "An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." *Borek Cranberry Marsh*, 785 N.W.2d at 621 (quoting *Restatement (Third) of Property: Servitude* § 1.2(1) (2000)); *see also* Richard R. Powell and Patrick J. Rohan, *Powell on Real Property* § 34.01 (2011).

Roundy's doesn't dispute that the leases only gave it nonexclusive easements in the common areas. Where the easement grant doesn't expressly make it exclusive, the easement holder "does not acquire dominion over the property affected, but is entitled 'only to a reasonable and usual enjoyment thereof.'" *Linter v. Office Supply Co.*, 219 N.W. 420, 425 (Wis. 1928). Nevertheless, Roundy's argues that it had an exclusionary right in the easements because it had the obligation to maintain the common areas (or pay the landlord for maintenance). But maintenance obligations, alone, don't establish a right to exclude. *See, e.g., Garrett v. O'Dowd*, 775 N.W.2d 549, 553-54 (Wis. Ct. App. 2009) (even where agreement obligated grantees to maintain and pay taxes on the easement, the easement was nonexclusive where the agreement didn't state otherwise); *see also O'Neil's*, 95 F.3d at 739 (applying Missouri law) (employer's exercise of mainte-

nance and control over property could not override the unambiguous language in lease granting nonexclusive easement); *United Food*, 222 F.3d at 1034-35 (applying Virginia law) (nonexclusive easement didn't provide employer with right to oust nonemployee organizers even though employer had obligations to clean and maintain those areas). Further, numerous leases indicate that the landlord, albeit with Roundy's consent, may "promulgate reasonable, nondiscriminatory rules and regulations for the use of the common areas," suggesting that Roundy's cannot promulgate such rules on its own. Although Roundy's had a practice of ejecting unwanted third parties from the common areas surrounding its stores, there was no evidence that its landlords were aware (or otherwise approved) of this conduct.

Roundy's also argues that Wisconsin statutory law provides even nonexclusive easement owners with a civil action to oust those that interfere with the use and enjoyment of the easement, citing to Wis. Stat. §§ 840.01 *et seq.* and Wis. Stat. §§ 844.01 *et seq.*[5] Section 844.01(1)

---

[5] The ALJ found that Roundy's, as easement holder, lacked a possessory interest, precluding it from bringing a trespass action under Wisconsin Statute § 943.13(1m)(b). Wisconsin makes it a violation for an individual to enter or remain "on any land of another after having been notified by the owner or *occupant* not to enter or remain on the premises." Wis. Stat. § 943.13(1m)(b) (emphasis added). The statute does not define "occupant" and we are not aware of any Wisconsin case that addresses whether a grantee of a nonexclusive easement

(continued...)

provides that "[a]ny person owning or claiming an interest in real property may bring an action claiming physical injury to, or interference with, the property or the person's interest therein . . . ." Section 840.01 defines "interest in real property" to include easements, and Section 844.01(3) defines "[i]nterference" as "any activity . . . which lessens the possibility of use or enjoyment of the interest." The statute establishes remedies for interfering with such property interests that include damages and injunctive relief. *See* Wis. Stat. § 840.03(1) ("Any person having an interest in real property may bring an action relating to that interest . . . .").[6] Roundy's asserts that under this statute, it has a right to bring a civil action to enforce and protect its interests in the easements.

Section 844.01(1), however, doesn't create an independent cause of action; it is a remedial and procedural

---

[5] (...continued)

is an "occupant" under the statute. We do not need to resolve this issue because Roundy's concedes (for the sake of argument) that the ALJ correctly determined that Roundy's wasn't an "occupant" under Wisconsin's trespass statute.

[6] The statute states that no remedy shall be denied on the ground that the plaintiff is not in possession unless a statute requires possession. *See* Wis. Stat. § 840.04. However, a person who does not have possession cannot bring an action under that chapter without first notifying the person with possession and alleging that the person with possession refuses to bring the action. *See* Wis. Stat. § 844.15(2). The person with possession must be joined as a defendant. *See id.*

statute that sets forth the remedies available when a cause of action exists. *See Menick v. City of Menasha*, 547 N.W.2d 778, 782 (Wis. Ct. App. 1995) (citing *Shanak v. City of Waupaca*, 518 N.W.2d 310, 320 (Wis. Ct. App. 1994) (stating that Section 844.01 "creates no rights or duties. It does not purport to create a cause of action. It is a remedial and procedural statute.")). In other words, Section 844.01 only provides remedies for persons who are injured as a result of an interference with their *interests* in real property. *See Schultz v. Trascher*, 640 N.W.2d 130, 139 (Wis. Ct. App. 2001).

Roundy's' reliance on Section 844.01 is therefore misplaced. Roundy's must show under Wisconsin common law that it had a sufficient property interest to oust the handbillers. Wisconsin courts have maintained that "[a] written easement holder has the right to use the easement in accordance with the express terms of the easement grant." *Grygiel v. Monches Fish & Game Club, Inc.*, 787 N.W.2d 6, 14 (Wis. 2010) (citing *Hunter v. McDonald*, 254 N.W.2d 282, 285 (Wis. 1977)). The language of the easement grant determines the primary purposes of the easement. *See id.*; *see also Powell on Real Property* § 34.12. "[E]very easement carries with it by implication the right to do what is reasonably necessary for the full enjoyment of the easement in light of the purpose for which it was granted." *Gallagher*, 637 N.W.2d at 86. "An obstruction or disturbance of an easement is anything which wrongfully interferes with the privilege to which the owner of the easement is entitled by making its use less convenient and beneficial than before. Obstructions or disturbances are unauthorized and constitute nui-

sances." *McDonald*, 254 N.W.2d at 285-86 (quoting 28 *C.J.S. Easements*, § 96).

Because Roundy's has rights to the extent of its nonexclusive use in the easements, it can enjoin third parties when they unreasonably interfere with this use. *See id.* at 285 (stating that owner of property may not unreasonably interfere with easement holder's use); *see also Linter v. Augustine Furn. Co.*, 225 N.W. 193, 194 (Wis. 1929) (allowing nonexclusive easement holder to seek injunctive relief where blockage of alley by non-owner for five minutes several times a day was material and unreasonable); *Restatement of Property* § 511 (explaining that an easement holder has the right to be free from interference by third parties); *Powell on Real Property* § 34.17 (easement owner can bring action to enjoin interference with easement by third parties). But as noted, the interference must be unreasonable with the easement's owner's intended use. *See Linter*, 225 N.W.2d at 194; *see also Vance v. Ford*, 67 P.3d 412, 417-18, 422 (Or. Ct. App. 2003) (requiring a showing of "substantial" or "unreasonable" interference with easement). Physical encroachment of the easement is not necessary to unreasonably interfere with its intended use. *See McDonald*, 254 N.W.2d at 286.

A few leases indicate that the "the easement shall be used for all customary and proper purposes" and others state that "no use of the [common areas] shall be made which detracts from the first-class nature of the Shopping Center . . . ." Still others require the landlord or tenant to maintain the common areas "in accordance with good shopping practice." The easements are

clearly intended to provide Roundy's, its employees, customers, and invitees (and the other tenants' employees, customers, and invitees) with ingress and egress to the stores, but are not so limited; rather, they are intended for use in a manner conducive to the commercial businesses that share those areas. The ultimate question, therefore, is whether the handbillers' actions *unreasonably* interfered with this purpose of the easements? To answer this question, it is helpful to look at other circuit court decisions addressing similar questions under the laws of various states.

The Eighth Circuit in *O'Neil's* found that the nonexclusive easement granted to O'Neil's didn't provide it with direct authority to exclude persons from the sidewalk in front of its store. 95 F.3d at 739. The nonexclusive easement in that case was for "ingress, egress, and parking." *Id.* at 734. O'Neil's prohibited union representatives from peacefully distributing handbills to its customers while on the sidewalk. *Id.* at 735. The court noted that under Missouri property law, an easement is a nonpossessory interest in land that entitles the owner to "a limited use or enjoyment of the land in which the interest exists." *Id.* at 739 (quotations omitted). "An easement owner 'is debarred from actions traditionally established for the protection of a possession, such as trespass, writ of entry, and ejectment, because the easement owner does not have the prerequisite possession.'" *Id.* (quotations omitted). Interference with an easement under Missouri law lies instead in a nuisance action. *Id.* Because the record didn't support an inference that the union's activities interfered with the right of

O'Neil's, its employees, or customers to use the easement property, O'Neil's couldn't exclude the handbillers. *Id.*; *see also Johnson & Hardin*, 49 F.3d at 240-41 (finding employer violated § 8(a)(1) by ousting peaceful handbillers who weren't interfering with the employer's use of the nonexclusive easement for ingress and egress to its premises); *see also A & E Food Co.*, 339 NLRB at 863-64 (respondent had no authority under nonexclusive easement to exclude union agents from the shopping center property).

The D.C. Circuit similarly found that a nonexclusive easement didn't provide the employer with the right to oust handbillers from outside its storefront. *See United Food*, 222 F.3d at 1034-35. The court noted that under Virginia law, the easement holder couldn't bring a trespass claim and only the owner or lessee of the sidewalks had the authority to exclude the organizers. *Id.* at 1036. Because there was no evidence in the leases that Farm Fresh had control over the sidewalks and Farm Fresh could only use the sidewalks in common with other co-tenants, it lacked power to exclude those it disliked from the area. *Id.* The court reasoned, "[w]e are unable to see why the power to expel peaceful organizers from an adjacent sidewalk is reasonably necessary for the use of leased property." *Id.* at 1037. Easements of access, the court found, don't entitle employers to exclude union representatives from adjacent common areas. *Id.* Because there was no evidence that the union representative impeded access to the store or interfered in any way with Farm Fresh's obligation to clean and maintain the side-

walks, the employer lacked the requisite property interest to exclude the organizers. *Id.* at 1038.

The Fourth Circuit, analyzing Pennsylvania law, came to a different conclusion in *Weis Markets, Inc. v. NLRB*, 265 F.3d 239, 246 (4th Cir. 2001). The court in *Weis* found that a nonexclusive easement under Pennsylvania law gave the employer sufficient property rights to oust handbillers from the sidewalk. The court based its ruling on a Pennsylvania Supreme Court case that found that a nonexclusive easement holder and property owner could oust union representatives from common areas and in doing so, indicated that the easement holder had rights comparable to the property owner. *Id.* at 247 (citing *Logan Valley Plaza, Inc. v. Amalgamated Food Emps. Union, Local 590*, AFL-CIO, 227 A.2d 874 (Pa. 1967), see *Weis*, 265 F.3d at 247-48 for subsequent procedural history). The Pennsylvania Supreme Court in *Logan Valley* reasoned that the invitation to the public was limited to those who might benefit the easement holder's and owner's enterprises, including potential customers as well as the employees of the shopping center. *Id.* (citing *Logan Valley Plaza*, 227 A.2d at 877). Based on this directive from the Pennsylvania Supreme Court, the Fourth Circuit concluded that because the union organizers were not "members of the public who might benefit Weis' enterprise, . . . their uninvited intrusion on the private property, the easement of Weis, was unlawful under the real estate law of Pennsylvania, which prevails here." *Id.* at 248.

Even if Pennsylvania provides easement owners with rights akin to property owners for purposes of excluding

unwanted visitors, as found in *Weis*, *see also Kao v. Haldeman*, 728 A.2d 345, 349 (Pa. 1999), we are called upon to use our best judgment to estimate how the Wisconsin Supreme Court would decide this issue. *See Blood v. VH-1 Music First*, No. 10-3729, ___ F.3d ___, 2012 WL 402046, *2 (7th Cir. Feb. 9, 2012). We find that Wisconsin case law is more aligned with Missouri and Virginia law in recognizing a distinction between a property owner's and nonexclusive easement owner's right to exclude unwanted visitors from the common areas. The Board properly applied Wisconsin law when concluding that peaceful union protestors, who do not obstruct patrons' ingress or egress or otherwise disrupt their shopping at Roundy's, are not *unreasonably interfering* with Roundy's use and enjoyment of its easement. We recognize that an interference under Wisconsin law need not be physical, *see McDonald*, 254 N.W.2d at 286, and the easements at issue aren't necessarily limited to ingress and egress, but the ALJ specifically found that the handbillers were engaged in peaceful conduct protected by Section 7, and there is nothing in the record to show that they were disruptive or that customers were inconvenienced or disconcerted by their presence. Under these facts to which we limit our holding, we do not find that Roundy's had a right under Wisconsin property law to exclude the Union representatives.

Because nonexclusive easement holders do not have property rights comparable to owners or lessees under Wisconsin law (they do not hold possessory interests), the *Babcock/Lechmere* framework doesn't apply, and the Board had to determine how such intermediate property

rights intersect with Section 7 rights. The Board's finding that Roundy's' property rights under Wisconsin law were insufficient to override the nonemployees' Section 7 rights was reasonable. The Board is entitled to a certain degree of deference when engaging in such line drawing in the context of labor relations under the Act. *See Lineback v. Irving Ready-Mix, Inc.*, 653 F.3d 566, 572 (7th Cir. 2011); *see also Johnson & Hardin*, 49 F.3d at 242 (affording the Board's decision—that the employer lacked a property right entitling it to exclude union organizers and therefore violated § 8(a)(1) of the Act—deference).

It was Roundy's burden to prove that it had a state property interest sufficient to oust the nonemployee handbillers. We conclude that Roundy's has not met that burden, that the Board's factual findings were supported by substantial evidence, and that the Board's legal conclusion—that a store owner who has only a nonexclusive easement in the common areas violates Section 8(a)(1) when excluding peaceful, nondisruptive handbillers engaged in protected Section 7 activities—is rational and consistent with the Act.

## IV. Conclusion

For the foregoing reasons, Roundy's petition for review is DENIED and the Board's cross-petition for enforcement of its order is GRANTED.

3-9-12