In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3322

LOCAL 702, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL
WORKERS, AFL-CIO,

*Petitioner*,

*v.*

NATIONAL LABOR RELATIONS BOARD,

*Respondent*,

and

CONSOLIDATED COMMUNICATIONS,
doing business as Illinois
Consolidated Telephone Company,

*Intervening-Respondent.*

Petition for Review of an Order of the
National Labor Relations Board.
Nos. 14-CA-094626 and 14-CA-101495.

ARGUED MAY 16, 2019 — DECIDED AUGUST 9, 2019

---

Before BAUER, HAMILTON, and ST. EVE, *Circuit Judges*.

BAUER, *Circuit Judge.*   Pat Hudson was a long time employee of Consolidated Communications ("Consolidated"), who was discharged due to strike-related misconduct. Following an appeal to the D.C. Circuit Court, the National Labor Relations Board (the "Board") issued a supplemental decision concluding that Consolidated did not violate § 8(a)(3) of the National Labor Relations Act (the "Act"), as codified at 29 U.S.C. § 158(a)(3). For the reasons that follow, we affirm.

## I. BACKGROUND

In December, 2012, Consolidated was negotiating with Local 702, International Brotherhood of Electrical Workers, AFL-CIO (the "Union"), after the expiration of a collective-bargaining agreement. When negotiations stalled, the Union ordered a strike. Hudson, who had worked for Consolidated for 39 years, was a Union member and participated in the strike.

### A. The Offending Conduct

On the morning of December 10, 2012, Hudson was driving to the Consolidated facility to participate in the picketing of its corporate headquarters when she saw a company truck on Route 16. She decided to follow the truck so she could set up an ambulatory picket at the job site as encouraged by the Union. Hudson was followed by another striking employee, Brenda Weaver, in a second vehicle.

When they caught up with the Consolidated truck, Weaver passed Hudson and the truck in the passing lane before pulling in front of the truck. Next, Hudson pulled alongside the truck and drove in the passing lane parallel to the truck until she accelerated and drove parallel to Weaver who was in front of the truck. After some time, traffic began to stack up behind Hudson who was driving parallel to Weaver.

Hudson accelerated, passed Weaver and pulled into the right lane to allow traffic to pass. At this time the Consolidated truck switched lanes, joined the line of passing cars and attempted to overtake Weaver and Hudson. Before it could pass Hudson, she changed lanes and intentionally blocked the Consolidated truck from passing. Afterwards, the Consolidated truck returned to the right lane behind Weaver where it remained for approximately a mile before it exited Route 16 to avoid any further incident. The entire incident took place at highway speeds.

On December 13, 2012, after the strike ended, Hudson was suspended pending an investigation of her conduct on December 10, and for two other strike-related incidents—neither of which are at issue here. On December 17, 2012, at a meeting between her and Consolidated where her Union representative was present, she was terminated for her dangerous vehicular activity in connection with the strike.

## B. NLRB Hearing and Appeal

Following Hudson's dismissal, the Union filed a claim alleging Consolidated violated the Act by terminating Hudson for protected conduct. The Board's Acting General Counsel filed a complaint and an administrative law judge ("ALJ") held

a hearing. The ALJ agreed with the Union and determined that none of the conduct cited warranted Hudson's discharge. The ALJ further found that Hudson's highway conduct was not egregious enough to warrant her termination and that any ambiguity as to the severity of the conduct should be resolved in her favor.

Following the Board's decision, Consolidated filed a petition for review with the U.S. Court of Appeals for the D.C. Circuit; the Board cross-appealed for enforcement and the Union intervened. While the D.C. Circuit largely agreed with the Board's decision, it did disagree with the Board's analysis of the high-speed driving incident. On remand, the court instructed the Board to consider all the circumstances surrounding the incident as well as the objective impact on a reasonable non-striker, not just the absence of violence.

The Board accepted the D.C. Circuit's remand and invited the parties to file position statements. Reexamining Hudson's conduct in light of the D.C. Circuit's opinion, the Board found that Hudson's actions were calculated to intimidate the non-striking employees and were inherently dangerous. Therefore, her acts were sufficiently egregious to lose protection of the Act. Ultimately, they dismissed the complaint against Consolidated.

Now, the Union appeals arguing that: the Board's decision creates a *per se* rule about highway conduct and that the Board's decision was unsupported by substantial evidence and ignored contrary evidence. We disagree.

## II. ANALYSIS

The Court gives "substantial deference to both [the Board's] findings of fact and its interpretations of the [Act, but] we must still determine whether the Board's decision is supported by substantial evidence and whether its legal conclusions have a reasonable basis in law." *Columbia Coll. Chicago v. Nat'l Labor Relations Bd.*, 847 F.3d 547, 552 (7th Cir. 2017) (internal quotations omitted citing *Roundy's Inc. v. N.L.R.B.*, 674 F.3d 638, 645–46 (7th Cir. 2012). "We defer to the Board's interpretation of the [Act] unless its legal conclusions are irrational or inconsistent with the Act." *Id.*

First, the Union argues that the Board's decision creates a *per se* rule that highway driving is inherently dangerous and any strike-related conduct at highway speeds necessarily costs the striker the protection of the Act. While we do not agree with this characterization of the Board's decision, the Union failed to raise it before the Board; therefore, we are jurisdictionally precluded from considering it. 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.").

### A. The Board's Decision was Based on Substantial Evidence

Next, we look to see if the Board's decision was based on substantial evidence and if its legal conclusions have a reasonable basis in law. *See Jam Prods., Ltd. v. Nat'l Labor Relations Bd.*, 893 F.3d 1037, 1042 (7th Cir. 2018). "Both standards are deferential; the Board's factual conclusions are supported by

substantial evidence when they are based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1042–43.

The D.C. Circuit ordered the Board to evaluate Hudson's conduct and "consider, consistent with precedent, *all* of the relevant circumstances, and evaluate the objective impact on a reasonable non-striker of misconduct committed on a high-speed public roadway with third-party vehicles present." *Consol. Commc'ns, Inc. v. Nat'l Labor Relations Bd.*, 837 F.3d 1, 18 (D.C. Cir. 2016) (emphasis in original) (citing *Oneita Knitting Mills, Inc. v. N. L. R. B.*, 375 F.2d 385 (4th Cir. 1967); *Int'l Paper Co.*, 309 NLRB 31, 36 (1992)). On remand, the Board did just that.

The Union argues that the Board's decision is not supported by substantial evidence and, to come to its conclusion, it relied on impermissible assumptions and inferences while ignoring contravening evidence. They suggest that the incident with the Consolidated Driver was brief, lasting only a moment or two; that neither driver was in any danger; that the conduct did not meaningfully impede the driver's progress; and that Hudson did not intend to impede or intimidate but only follow so she could set-up an ambulatory picket at the job site. Moreover, the Union argues that the Board improperly inferred that the conduct was intentionally intimidating and assumed that highway driving was inherently dangerous.

In *Oneita Knitting*, striking employees followed non-striking employees and, in some instances, drove recklessly or hurled eggs or tomatoes. 375 F.2d at 391-392. In *Int'l Paper Co.*, a striking employee followed replacement employees as they

drove home, tailgating, harassing, and making obscene gestures. Here, the conduct may be less severe, but it is still sufficient to forfeit the Act's protection.

It is uncontested that Hudson was traveling on a major thoroughfare at a high rate of speed. She pulled in front of Consolidated's vehicle and purposely impeded their progress, only relenting when the Consolidated truck exited the highway and she was no longer able to pursue. The Consolidated driver testified that he felt unsafe and, in an effort to avoid further incident or danger, he exited the highway and took an alternate route to the job site.

While the Union argues that Hudson's conduct was not intended to intimidate or endanger the Consolidated employees and that she only intended to follow them to set up an ambulatory picket, that suggestion is belied by the fact that she was following them from the front and purposely impeded their progress. These acts illustrate a thorough plan to do more than follow the work vehicle and are not "animal exuberance" which the Board can and does excuse. *Advance Indus. Div. Overhead Door Corp. v. N.L.R.B.*, 540 F.2d 878, 882 (7th Cir. 1976) ("Trivial rough incidents or moments of animal exuberance must be distinguished from misconduct so violent or of such a serious character as to render the employee unfit for further service.").

### III. CONCLUSION

Because the Board based their decision on substantial evidence and a reasonable application of the law, we AFFIRM.